E. O. Wood

*v.*

Edenfield Electric Company, Inc.

364 S. W. 2d 908

(*Nashville,* December Term, 1962.)

Opinion filed February 7, 1962.

MacFarland & Colley, Columbia, for petitioner.

Shelton & Shelton, Columbia, for respondent.

Mr. Justice White delivered the opinion of the Court.

This is a workmen's compensation case commenced by E. O. Wood against Edenfield Electric Company, Inc., to collect certain benefits alleged to be due him under the Act.

The Trial Court made an award to the petitioner based upon permanent partial disability of twelve and one-half (12½%) per cent to the body as a whole.

It is admitted that the petitioner sustained an accidental injury growing out of and in the course of his em-

ployment. This injury occurred on November 2, 1959 resulting in a hernia to the petitioner. On June 8, 1960 Wood was admitted to the hospital and the hernia was successfully repaired according to the medical proof.

The defendant has paid all hospital bills and doctor bills incurred by or on behalf of the petitioner in the repair of the hernia.

From the award made by the Trial Court for permanent partial disability the Company has appealed and contends that the Court erred:

(1). Because there is no material evidence to support the judgment; and

(2). Because it relied upon the sole testimony of the petitioner uncorroborated by either lay or medical testimony as to the permanent partial disability awarded him by the judgment.

As originally drawn the Act made no express provision that a hernia was compensable. The question, therefore, of when a hernia was caused by an injury making it compensable or merely resulted from some inherent physical weakness or disease was always difficult of solution by the Courts. Unless it resulted from some form of accidental trauma arising out of and in the course of the workman's employment, he was not entitled to be compensated.

■ The difficulties in finding the truth in such a situation gave rise to the enactment of Chapter 90, Acts of 1941. It was the purpose and object of this legislation to remove the issue as far as possible from the field of conjecture and speculation. *Matthews v. Hardaway Con-*

*tracting Co.*, 179 Tenn. 98, 163 S.W.2d 59. This chapter now appears as T.C.A. sec. 50-1009 and requires that certain proof be presented by an employee before the Court will be justified in granting him an award. The petitioner in this case met all the requirements of the Act, resulting in the award aforesaid.

This is the first case to come before us, however in which there has been an award for any degree of permanent partial disability resulting from hernia which was successfully repaired. A hernia, according to the American Illustrated Medical Dictionary, is "the protrusion of a loop or knuckle of an organ or tissue through an abnormal opening or the protrusion of some internal structure through the abdominal wall".

One of the doctors testifying in this case said that the "hernia consists of a protrusion of a portion of the contents which are within the abdomen * * * out through a weak spot which was either present or was acquired."

Ambrose M. Langa, M.D., repaired the hernia which he described as a large inguinal hernia on the right. This operation took place on June 18, 1960, and the petitioner remained under medical care until September 20, 1960 when Dr. Langa saw him for the last time. When asked the result of the operation, Dr. Langa said: "I thought he had received an excellent result of his hernia operation, it means that the hernia was gone * * *."

In reply to the question as to whether or not there is any resulting disability from a hernia which has been successfully repaired the doctor stated: "Generally there is no such thing, if a man is operated on and he will recover or has a good repair of his hernia in general there

is no disability at all.'' He also said that at one time he evaluated the permanent partial disability of the petitioner at three (3%) per cent of the body as a whole, but he had given the matter further consideration and he could think of no job that the petitioner could not do as well after the operation as he could have before. He said ''as far as the hernia is concerned I believe that he would be able to do whatever he did before, sir. I believe there will not be any permanent disability as the result of the hernia operation.''

On cross-examination he did say that the petitioner might suffer some pain and discomfort at the site of the scar on exercising or straining or lifting, and there could be some limit to the things that he could do because of the discomfort.

Dr. T. K. Young examined the petitioner on the 15th day of May, 1961, which was eleven months after the date of the operation and about eight months subsequent to the date upon which Dr. Langa last examined the petitioner.

Dr. Young stated that his examination revealed that the hernia repair was satisfactory. He also said that Mr. Wood was suffering with muscle weakness and tremor, but this was not caused by or related to the hernia or the operation for the repair thereof. His final opinion was: ''There were complaints referable to pain and discomfort * * * I thought the repair was good and adequate and I would personally think that the surgery itself or the hernia would not cause any disability since the repair was firm.''

On cross-examination he said: ''Well its firm and completely repaired, there is no hernia there any more.''

We do not think the Court would have been justified in making an award to the petitioner based upon the medical testimony. We next consider the testimony of the petitioner supported, in a slight degree only, by other lay witnesses about the degree or extent of permanent disability.

Wood said that he was sixty-six years of age at the time of his injury and sixty-eight at the date of the trial. Prior to the accident he was doing the heavy work in his employment and that he had been engaged in this type of work since he was nineteen years of age. He was asked:

"Q. Since you had this rupture on November 2nd will you tell the Court the difference, of any, if there has been any difference in the work that you have been able to do before that and since then?

"A. Why Yes, I can. I'm just not able to do any hard work at all since this operation. I can do a little light work, such as that, but whenever it comes to anything that is heavy, a lot of walking to do or anything like that I absolutely can't do it.

"Q. Do you have any pain associated with extreme exercise or heavy work?

"A. I do.

"Q. Where is that pain?

"A. In my groin, down here in the operation. (Indicating by placing hand on person.)

"Q. In that same place where you were operated on?

"A. That is correct.

"Q. Now did you ever have that trouble before this Mr. Wood, before this November 2, 1959?

"A. No, sir, never had no trouble there."

The petitioner was then asked whether or not he was able to do any of the heavy work that he had done before he suffered the hernia, and his reply was: "No, sir, I just can't do it." He was then asked:

"Q. Now Mr. Wood, based upon your ability to do the work that you did before this happened on November 2nd and your ability to do the work that you do now, can you state to the Court how much less you are able to do than you did before?

"A. Well I'd say fifty per cent less than what I did before I got injured.

"Q. Now you have gone back and tried to work since the doctor released you from your operation?

"A. I have."

The question then presented to us on this appeal is whether or not this evidence, supported in some degree by other lay witnesses, is such material evidence as would require this Court to affirm the Trial Judge.

■ In the case of *Hamlin & Allman Iron Works v. Jones,* 200 Tenn. 242, 292 S.W.2d 27, it was held that a lay witness may testify to his own physical condition provided that he first states the detailed facts of his physical condition and then gives his opinion or conclusion.

In that case the petitioner testified that he had suffered a seventy-five (75%) per cent disability to his body as a whole. Two doctors testified for the defendant to the

effect that said employee had fully recovered and they could find nothing wrong with him that would keep him from being able to work.

The Trial Court in weighing the evidence determined that the employee had suffered disability of fifty (50%) per cent to the body as a whole. In other words, he weighed the testimony under the general rules and found in favor of the petitioner to the extent indicated. The award was approved by this Court.

The case of *McKenzie v. Campbell & Dann Manufacturing Company et al.*, 209 Tenn. 475, 354 S.W.2d 440, approved *Hamlin & Allman Iron Works v. Jones*, supra.

In *Anderson v. Volz Construction Company et al.*, 183 Tenn. 169, 191 S.W.2d 436, the Court held:

"On appeal under Workmen's Compensation Act, Supreme Court does not reweigh evidence, but searches record only so far as necessary to determine whether there is material evidence to support finding of trial judge, who finally determines weight of evidence and witnesses' credibility."

There are many, many other cases to the same effect establishing this rule beyond question.

It is common knowledge that surgical operations of any kind leave scar tissue and quite often there remains a permanent tenderness and discomfort in the area of the operation producing pain on occasions. Such tenderness, pain and discomfort do not ordinarily interfere with the ordinary functions of the body, nor do they produce any disabling results. To make awards for alleged disability resulting from surgical operation based upon

the testimony of the petitioner that he can no longer perform the functions that he could perform prior to the operation could result in much mischief. Therefore, the Courts should scrutinize and weigh such testimony very carefully before making an award.

If we were the Court of first impression and the trier of facts in this case, we would conclude that this petitioner has suffered no permanent disability which would interfere with his ability to carry on his usual occupation. However, since we do not weigh the evidence and review it only to determine whether or not there is any material evidence to support the action of the Trial Court, we are bound by the action reached herein, although we would like not to be in this case. This case will have to be affirmed.