Daniella M. CAPPS, Plaintiff–Appellant,

v.

GOODLARK MEDICAL CENTER, INC., Defendant–Appellee.

Supreme Court of Tennessee, at Nashville.

Feb. 4, 1991.

Patrick Johnson, Nashville, for plaintiff-appellant.

W. Douglas Brown, Darrell G. Townsend, Nashville, for defendant-appellee.

OPINION

DAUGHTREY, Justice.

In this workers' compensation appeal, we are asked to apply T.C.A. § 50–6–212(a), the so-called "hernia statute," to a unique set of facts involving the development of a work-related hernia at the site of a prior surgical incision. The trial court held that recovery was barred under subsection (5) of the statute, involving the non-compensa-

bility of pre-existing hernias. We disagree and reverse the judgment of the trial court.

## STANDARD OF REVIEW

We note at the outset that the dispositive issue in this case is a question of law involving statutory interpretation. Hence, there is no presumption of correctness attached to the trial court's decision. *Katz v. Bilsky*, 759 S.W.2d 420, 421–2 (Tenn.App. 1988).

## THE STATUTE

T.C.A. § 50–6–212(a) governs the recovery of workers' compensation benefits for hernias, as follows:

> In all claims for compensation for hernia or rupture, resulting from injury by accident arising out of and in the course of the employee's employment, it must be definitely proven to the satisfaction of the court:
>
> (1) That there was an injury resulting in hernia or rupture;
>
> (2) That the hernia or rupture appeared suddenly;
>
> (3) That it was accompanied by pain;
>
> (4) That the hernia or rupture immediately followed the accident; and
>
> (5) That the hernia or rupture did not exist prior to the accident for which compensation is claimed.

The trial court correctly held that subsections (1)–(4) had been satisfied by the facts of this case. The only remaining question concerns the satisfaction of subsection (5).

## THE FACTS

On appeal, it appears that the facts are largely undisputed, although at trial the employer did contest the sufficiency of notice of the injury. The record shows that the employee, Daniella Capps, had been an x-ray technician for some 30 years. At the time of her injury, however, she had worked for only six weeks at the Cheatham Medical Center, which is owned by defendant Goodlark Medical Center. One of her duties as an x-ray technician was to assist patients on and off the x-ray table and in and out of their hospital beds.

One Friday afternoon in August 1987, while removing a patient from the x-ray table, Capps felt "a slight pulling and burning sensation" just below her navel. It caused a "knot in [her] belly" that was very painful. She said that she reported it immediately to her supervisor and got his permission to go to a doctor in the clinic next door.

The physician whom she saw that afternoon was Dr. James Anderson. He told Capps that the knot in her belly was something "like a hernia." Dr. Anderson referred her to Dr. Wiser, a surgeon, and advised her to wear a girdle in the meantime.

Capps testified that she went back to work on Monday, wearing a girdle, and managed to work through that day. But on Tuesday, she said, while trying to lift an elderly x-ray patient from a stretcher to his bed, she experienced a "ripping, tearing, burning sensation" at the same spot where she had experienced pain the previous Friday. She left work in a great deal of pain, spent a sleepless night at home, and reported to the Cheatham Medical Center Emergency Room early the next morning. Hospital records indicate that she reported abdominal pain as the result of lifting a patient. She saw Dr. Wiser at Goodlark Medical Center within a day or two and underwent surgery to repair the hernia the following week.

Daniella Capps had had ovarian surgery in 1969 and both a hysterectomy and a bladder operation in February 1987, some six months before she was injured in this case. In the 1969 and 1987 operations, the surgeons had used the same abdominal incision, and it was along this incision line that Capps's hernia developed.

A hernia has been defined as "the protrusion of a loop or knuckle of an organ or tissue through an abnormal opening or the protrusion of some internal structure through the abdominal wall." *Wood v. Edenfield Electric Co.*, 211 Tenn. 295, 298, 364 S.W.2d 908, 909 (1963) (quoting from the American Illustrated Medical Dictionary). Dr. Anderson testified by deposition in this case that a hernia results from

"a weakness in the wall of the abdominal cavity ... where the tissues are not holding up the support that they should be." He further explained that "[h]ernias occur because of a weakness, an inherent weakness [in the abdominal wall], whether that's incisional or whether it's congenital, or some other unexplained weakness in the abdominal wall." He also testified that a hernia will not develop in the absence of such an "inherent weakness."

In this case, Dr. Anderson said, Daniella Capps suffered an "incisional hernia," one that developed along the suture line of her prior operations when scar tissue from the surgery gave way, producing a bulge in her abdominal wall. He testified that she had first come into his office on August 20, 1987, complaining of abdominal pain that resulted from lifting a patient. Dr. Anderson's diagnosis was that Capps "had an inherent weakness from the previous surgery which developed into a hernia after lifting a patient...." He further testified that there was no indication that she had ever had a previous hernia.

Reading the provision in T.C.A. § 50–6–212(a)(5) literally, the trial judge held that "the prior [surgical] incision site was, in fact, a rupture of the abdominal wall" and that because of this prior "rupture," the injury which Capps suffered at work was not compensable under subsection (5) of the "hernia statute."

We conclude that this ruling is based upon a misinterpretation of § 50–6–212(a)(5). By its own terms, that provision requires a finding by the trial court that "the hernia or rupture did not exist prior to the accident for which compensation is claimed." Obviously, the terms "hernia" and "rupture" are used interchangeably in the statute, to refer to the same kind of medical condition, i.e., a protrusion of an organ or tissue through the abdominal wall, resulting from an inherent weakness in the abdominal wall. It is also obvious that the language of the statute refers to the current "hernia or rupture," i.e., the one which results from "the accident for which compensation is claimed,"

and not to a past condition which is unrelated to the new injury.

Thus, in *Cook v. Great Western Casualty Co.*, 779 S.W.2d 365 (Tenn.1989), the employee had suffered an initial hernia in 1976 while working for a different employer. In 1981, a second hernia occurred at the site of the previous hernia, as the result of a work-related injury. We held that Cook's second hernia was compensable under T.C.A. § 50–6–212(a), despite the existence of the prior hernia, because it was a new injury and not one in "exist[ence] prior to the accident for which compensation [was] claimed." *Id.* at 367 (quoting § 50–6–212(a)). Hence, *Cook* stands for the proposition that the mere existence of a prior "hernia or rupture," even one on the same site as the current hernia, will not necessarily defeat recovery, where the new hernia meets all the criteria of the statute and is therefore compensable.

The facts in *Cook* and those in this case differ dramatically from the facts in *F.H. Lawson Co., v. Rambo*, 225 Tenn. 217, 465 S.W.2d 732 (Tenn.1971). There, the worker had been treated in 1964 for a hernia which, by 1968, had caused him so much pain that he was unable to work. Despite Rambo's claim that he had experienced no difficulty for a year or more prior to his final disability, the court held that the hernia was a pre-existing one and was therefore not compensable. Here, the employee had experienced not a hernia but a surgical incision some months before the events in this case, but the incision had healed. Thus, unlike the facts in *Rambo*, the facts in this case fail to establish a pre-existing "hernia or rupture" at the time of Capps's work-related injury. Instead, the "hernia or rupture" first occurred when Capps lifted a patient on August 20, 1987, and thereby injured herself.

The fact that Daniella Capps had scar tissue that left her susceptible to the development of a hernia is no more a bar to recovery here than if her susceptibility to hernia was caused, as Dr. Anderson put it, by "congenital or some other unexplained weakness in the abdominal wall." The real question is whether the hernia she experi-

enced had earlier developed on its own and was aggravated by a work-related injury, or whether it was the "painful," "sudden," and "immediate" result of a work-related injury, as required by the compensation statute.

It is true, as counsel for the employer argued at trial and on appeal, that the "hernia statute" creates an exception to the general rule that an employer takes an employee as it finds that employee. Generally, an employee may recover for aggravation of a pre-existing condition, if it can be determined that the aggravation was caused by a the employee's exertion in performing his or her duties. *Banks v. St. Francis Hospital*, 697 S.W.2d 340, 342–3 (Tenn.1985). By contrast, T.C.A. § 50–6–212(a) disallows recovery for a pre-existing hernia, even if it is aggravated by a work-related accident. However, the record in this case shows conclusively that Daniella Capps's hernia was, in fact, caused by "the accident for which compensation is claimed" and was not already in existence at the time of the accident. Her prior surgical incision, long since healed, is simply not a pre-existing "hernia or rupture" for purposes of subsection (5).

The employer argues strenuously that recovery cannot be allowed in this case because the injury was due to a "pre-existing weakness", citing *Matthews v. Hardaway Contracting Company*, 179 Tenn. 98, 102, 163 S.W.2d 59 (1942):

> It is a matter of common knowledge to men engaged in the science of medicine and surgery, of which we may take judicial cognizance, that a hernia or rupture may result from many causes wholly independent of any traumatic or compensable injury. It is often due to congenital weakness of the abdominal wall and various diseases. Under such circumstances, the hernia or rupture might follow any slight exertion such as coughing or sneezing. It might appear when the workman is engaged in his daily task and not be due to strain or physical act which could be even thought of as an injury. The question of when a hernia is caused by an injury, or merely results from some inherent physical weakness or dis-

ease, is one that is difficult of solution by the courts. Unless it results from some form of trauma arising out of and in the course of the workman's employment, he is not entitled to compensation.

The short answer to this argument is that all hernias, by definition, result from "pre-existing weakness," *i.e.*, a weakness in the abdominal wall that makes it possible for a hernia to develop. However, this fact does not bar workers' compensation for *all* hernias. They are compensable if they meet the criteria set out in § 50–6–212(a), criteria which are designed to insure that the employee's hernia "results from some form of trauma arising out of and in the course of the workman's employment." *Matthews v. Hardaway Contracting Co.*, 163 S.W.2d at 60. In this case, there is unrefuted expert testimony that Capps's hernia was the result of such trauma.

### CONCLUSION

The Tennessee "hernia statute", T.C.A. § 50–6–212(a), has been interpreted to prevent recovery for the "aggravation or enlargement of a pre-existing hernia," *F.H. Lawson Co. v. Rambo*, 465 S.W.2d at 735 (citing *Matthews v. Hardaway*, 163 S.W.2d at 60), and for "a congenital hernia or a pre-existing hernia [which] was not occupationally caused or related." *Cook v. Great Western Casualty Co.*, 779 S.W.2d at 366. We conclude that there was no such pre-existing "hernia or rupture" in this case. The hernia that did develop was clearly "occupationally caused or related" and is therefore fully compensable. We find no support in the law for the overly narrow interpretation of subsection (5) invoked by the trial judge to prevent recovery in this case.

The judgment of the trial court is reversed, and the case is remanded for the entry of judgment in the plaintiff's favor.

REID, C.J., and DROWOTA, O'BRIEN and ANDERSON, JJ., concur.