**STATE of Tennessee, Appellee,**

v.

**Heather Jo BOYD, Kimberly Lamky and Raymond Douglas Wilson, Appellants.**

Court of Criminal Appeals of Tennessee, at Nashville.

Oct. 25, 1995.

Permission to Appeal Denied April 8, 1996.

James Barr, III, Nashville, C. Diane Croser, Assistant Public Defender, Franklin, D. Stuart Caulkins, Franklin, for Appellants.

Charles W. Burson, Attorney General and Reporter, Ellen H. Pollack, Assistant Attorney General, Nashville, Joe D. Baugh, Jr., District Attorney General, Mark Puryear, Assistant District Attorney General, Franklin, for Appellee.

## OPINION

WELLES, Judge.

The Defendants appeal to this court as of right from judgments entered on a jury ver-

dict finding them guilty of prostitution.[1] Raymond Wilson was also convicted of possession of cocaine and marijuana.[2] Heather Jo Boyd was sentenced to six months in jail, with the sentence suspended after service of fifteen days. Kimberly Lamky was sentenced to six months in jail, with the sentence suspended after service of seven days. Raymond Wilson was sentenced to six months in jail, with the sentence suspended after service of fifteen days.

Three issues are presented on this appeal: (1) That the evidence submitted at trial was insufficient to convict each Defendant of prostitution; (2) that the Tennessee statute prohibiting prostitution is constitutionally void for vagueness; and (3) that the sentences imposed on each Defendant were improper.

On February 23, 1993, the Brentwood Police Department and the Tennessee Highway Patrol set up an undercover prostitution sting operation based at a hotel in Brentwood, Tennessee. The officers placed video cameras in the living room and bedroom areas of a guest room at the hotel. The hidden cameras did not record the entire event because of an inadvertent blind spot in the camera's range. Police officers audited the hotel room from a nearby room that was equipped with television monitors. The arrest team auditing the room were to await the code words from the undercover officer, which by police policy were to be used if the suspects made any physical contact with the officer.

At about 9:17 p.m., an undercover investigator placed a call to "Summer's Fantasy," a business which had advertised in a local newspaper. A woman answered the phone and told the investigator that they "had girls that put on a real good show together." The investigator agreed to pay two hundred and fifty dollars for a one-hour session with "Summer" and "Kendra."

Another officer was parked in a vehicle in the hotel parking lot for surveillance purposes. At about ten o'clock p.m., he saw Defendants Boyd and Lamky arrive in a gray Chevrolet Caprice and then enter the hotel. The car then pulled away from the entrance and stopped farther away in the parking lot. A few minutes later, the two women arrived at the undercover investigator's room. Boyd was carrying a red nylon bag, and Lamky requested the two hundred and fifty dollar payment, stating that she had to pay the driver. After receiving the two hundred and fifty dollars from the investigator, Lamky left the room for a brief time and then returned. The officer in the parking lot then took the driver of the car, Defendant Wilson, into custody and searched the car. The police found quantities of cocaine and marijuana in the car.

When Lamky came back to the room the investigator asked if they wanted to "do it" in the living room or bedroom. They chose the living room and then turned on the radio. They started to dance and remove their clothes. Lamky pulled down Boyd's bra, revealing her breasts to the investigator. Boyd then moved her hands down Lamky's body and removed her underpants. Boyd placed her hands on Lamky's buttocks and placed her face near Lamky's genital area. Immediately after this, Boyd crawled over to the investigator and sucked his finger. The investigator then signaled to the other officers in the nearby room that the arrests were to be made. As the officers entered the room, Lamky stated that she and Boyd were "straight-up dancers." An officer confiscated the red nylon bag that Boyd had brought and found, among other things, four bottles of hot body paints, four tie-down straps, a rubber dildo, and a clear tube with a squeeze ball.

When interviewed by the police, Wilson said that he was hired to drive the dancers to jobs. His car was searched, and police found a box of business cards for Summer's Fantasy, three condoms, a beeper, cocaine, marijuana and some cash. Boyd owned forty percent of Summer's Fantasy. Boyd and Lamky each said that they got paid for dancing for Summer's Fantasy.

At trial, the jury retired to deliberate and later submitted a question to the court: "Is

1. Tenn.Code Ann. § 39–13–513.

2. Tenn.Code Ann. § 39–17–418.

there a definition for sexual relations?" The court gave the following response: "The Tennessee legislature has provided no statutory definition for sexual relations. It is your duty as jurors to define this."

At the sentencing hearing, the trial court concluded that Boyd was the leader of the prostitution crime because she was part owner of the business. In sentencing the Defendants, the trial court considered the need for deterrence and the need to avoid depreciating the crime.

■ The Defendants argue that the evidence submitted at trial was insufficient to convict them of the crime of prostitution beyond a reasonable doubt. When the sufficiency of evidence is challenged on appeal, this court must review the record to determine if the evidence submitted at trial was sufficient "to support the finding of the trier of fact of guilt beyond a reasonable doubt." T.R.A.P. 13(e). This rule is applicable to findings of guilt based on direct evidence, circumstantial evidence, or a combination of the two. *State v. Matthews,* 805 S.W.2d 776, 779 (Tenn.Crim.App.1990).

■ In determining the sufficiency of the evidence, this court does not reweigh or reevaluate the evidence. *State v. Cabbage,* 571 S.W.2d 832, 835 (Tenn.1978). Nor may this court substitute its inference for those drawn by the trier of fact from circumstantial evidence. *Liakas v. State,* 199 Tenn. 298, 305, 286 S.W.2d 856, 859 (1956). This court is required to give the State the strongest legitimate view of the evidence contained in the record as well as any reasonable and legitimate inferences which may be drawn from the evidence. *State v. Herrod,* 754 S.W.2d 627, 632 (Tenn.Crim.App.1988).

■ Questions concerning the credibility of witnesses, the weight and value to be given to the evidence, as well as all the factual issues raised by the evidence, are resolved by the trier of fact, not this court. *State v. Pappas,* 754 S.W.2d 620, 623 (Tenn. Crim.App.1987). A guilty verdict by the jury, approved by the trial judge, accredits the testimony of the witnesses for the State and resolves all conflicts in favor of the State. *State v. Grace,* 493 S.W.2d 474 (Tenn.1973).

■ The Defendant has the burden in this court showing why the evidence is insufficient to support the verdict returned by the trier of fact. *State v. Tuggle,* 639 S.W.2d 913, 914 (Tenn.1982). This court will not disturb a verdict of guilt unless the facts contained in the record and the inferences which may be drawn from those facts are insufficient, as a matter of law, for a rational trier of fact to find the Defendant guilty beyond a reasonable doubt. *State v. Matthews,* 805 S.W.2d at 780.

Tennessee Code Annotated section 39–13–512(5) defines prostitution as engaging in sexual activity as a business. "Sexual activity" is defined only as sexual relations, including homosexual sexual relations. Tenn.Code Ann. § 39–13–512(6).

The Defendants do not dispute what factually occurred in the hotel room on the night in question. The question that remains, however, is whether the conduct by Boyd and Lamky amounted to "sexual relations." As the statute in question gives no guidelines on how to define sexual activity other than to say "sexual relations," we must consider if a rational trier of fact could find that the conduct in the hotel room amounted to "sexual relations." Although there was no touching of the genitals by either party, Boyd and Lamky danced with each other while nude, Boyd touched Lamky's buttocks, put her face in the area of Lamky's genitals, and also sucked on the finger of the investigator.

■ The purpose of codification of all criminal offenses is to advise the public as to what conduct is criminal. The Defendants argue that Tennessee Code Annotated section 39–13–512 is unconstitutionally vague in violation of the due process requirements under the 14th Amendment to the United States Constitution, thus making it necessary to reverse the Defendants' convictions. The Due Process Clause of the 14th Amendment prohibits the States from holding a person criminally responsible for conduct that is not reasonably understood to be proscribed. *United States v. Harriss,* 347 U.S. 612, 617, 74 S.Ct. 808, 811–12, 98 L.Ed. 989 (1954). Also, due process requires that people be given sufficient warning that they may avoid

prohibited conduct. *Rose v. Locke*, 423 U.S. 48, 49–50, 96 S.Ct. 243, 243–44, 46 L.Ed.2d 185 (1975). If people of common intelligence must necessarily guess at the meaning of a statute and differ as to its application, then the statute is unconstitutionally vague and invalid. *Harriss*, 347 U.S. at 617, 74 S.Ct. at 811–12; *Underwood v. State*, 529 S.W.2d 45, 47–48 (Tenn.1975); *Estrin v. Moss*, 221 Tenn. 657, 430 S.W.2d 345 (1968). However, a statute will not be considered unconstitutionally vague and therefore invalid simply because the reviewing court believes it could have been drafted with better precision. *Robinson v. United States*, 324 U.S. 282, 286, 65 S.Ct. 666, 668, 89 L.Ed. 944 (1945); *State v. Lunati*, 665 S.W.2d 739, 744 (Tenn.Crim. App.1983), *cert. denied*, 466 U.S. 938, 104 S.Ct. 1913, 80 L.Ed.2d 461 (1984). Furthermore, vagueness in official documents will constitute a violation of due process only when the aggrieved party can show that the statute failed to give adequate notice of some duty that the government was imposing on them. *Murray v. Norberg*, 423 F.Supp. 795, 796 (D.R.I.1976).

In 1989 with the passage of the Criminal Sentencing Reform Act, the legislature abolished all common-law offenses. Before conduct can now constitute a violation of the criminal law, it must be "defined as an offense by statute, municipal ordinance, or rule authorized by and lawfully adopted under a statute." Tenn.Code Ann. § 39–11–102(a) (1991 Repl.). This provision is essential to two of the stated objectives of the criminal code:

[to g]ive fair warning of what conduct is prohibited, and guide the exercise of official discretion in law enforcement, by defining the act and the culpable mental state which together constitute an offense; [and to g]ive fair warning of the consequences of violation....

Tenn.Code Ann. § 39–11–101(2) & (3).

■ Thus, our code recognizes the importance of clearly defined criminal offenses. Clear definition is essential not only for the benefit of the accused but also to comply with state and federal constitutional obligations. Tenn. Const. Art. 1, §§ 8 & 9; U.S. Const. Amend. VI, XIV. If an offense is not defined

so as to afford persons of ordinary intelligence fair notice of what conduct is prohibited, it violates due process. *State v. Netto*, 486 S.W.2d 725, 728 (Tenn.1972).

■ The standard for defining "sexual relations" and prostitution has been the subject of much dispute. Some courts have considered the fondling of genitals, buttocks, and breasts to be "sexual relations." *People v. Love*, 111 Cal.App.3d Supp. 1, 168 Cal. Rptr. 591 (Super.Ct.1980). On the other hand, nude modeling has been held not to be prostitution. *People v. Hill*, 103 Cal.App.3d 525, 163 Cal.Rptr. 99 (1980). Although many people would agree that actual intercourse is not necessary to constitute "sexual relations," there may be much disagreement as to which sexually arousing or suggestive acts short of intercourse constitute sexual relations and which do not.

The State would have this court follow the lead of the Superior Court of Pennsylvania in *Commonwealth v. Robbins*, 358 Pa.Super. 225, 516 A.2d 1266 (1986). In that case, the owner of the massage parlor was arrested for prostitution for allowing the massaging of male genitals for sexual stimulation. The court held that the prostitution statute, which is very similar to Tennessee's statute, did not fail for vagueness because men of common intelligence would know that masturbation as a business would fall under the umbrella of "sexual activity." *Id.* 516 A.2d at 1268. In the case *sub judice*, however, there was no proof of any contact with the genitals of either the dancers or the investigator.

The Defendant Lamky would have us follow the Pennsylvania Superior Court's ruling in *Commonwealth v. Bleigh*, 402 Pa.Super. 169, 586 A.2d 450 (1991), in which it held that nude dancers were not guilty of prostitution for the self-masturbation of the viewers where the dancers and the viewers were separated by a pane of glass and there was no contact between them. *Id.* 586 A.2d at 453. Of course, in the case *sub judice*, there was some contact between the dancer and the patron.

The facts herein lie somewhere in between the two Pennsylvania cases. There was some contact between the dancers and be-

tween the dancer and the patron, but there was no touching of the genitals between the dancers and only the finger of the patron was touched. The question is whether the statute gave the dancers adequate warning that their conduct amounted to "sexual relations." The business in question, Summer's Fantasy, continued to operate after these arrests, and, according to Defendant Boyd's testimony at her sentencing hearing, the company has performed essentially the same routine for other police officers (not undercover) with no problems. While there is no doubt that the dancers intend for their act to be sexually arousing and suggestive of more intimate acts, we conclude that the language of the statute did not give them or anyone else sufficient warning that those acts would constitute "sexual relations" such as is prohibited by the prostitution statute.

We emphasize that we do not find Tennessee's prostitution statute to be unconstitutionally vague. The statute remains enforceable. We do conclude that the statutory language does not clearly prohibit the conduct of the Defendants in the case *sub judice.*

Defendant Wilson also argues there was insufficient evidence to convict him of possession of cocaine and possession of marijuana. The cocaine and marijuana were found in the car Wilson was driving on the night in question. No explanation was presented for this at trial. We conclude there was sufficient evidence to convict him of both counts.

Finally, the Defendants argue that the sentences imposed by the trial court were excessive. Even though we reverse and dismiss the convictions for prostitution, we will address the sentencing issues to facilitate possible further judicial review.

When there is a challenge to the length, range or manner of service of a sentence, it is the duty of this court to conduct a *de novo* review with a presumption that the determinations made by the trial court are correct. Tenn.Code Ann. § 40–35–401(d). This presumption is "conditioned upon the affirmative showing in the record that the trial court considered the sentencing princi-ples and all relevant facts and circumstances." *State v. Ashby,* 823 S.W.2d 166, 169 (Tenn.1991). The Sentencing Commission Comments provide that the burden is on the appellant to show the impropriety of the sentence.

Our review requires an analysis of (1) the evidence, if any, received at the trial and sentencing hearing; (2) the presentence report; (3) the principles of sentencing and the arguments of counsel relative to sentencing alternatives; (4) the nature and characteristics of the offense; (5) any mitigating or enhancing factors; (6) any statements made by the defendant in his own behalf; and (7) the defendant's potential for rehabilitation or treatment. Tenn.Code Ann. §§ 40–35–102, –103 and –210; *State v. Smith,* 735 S.W.2d 859, 863 (Tenn.Crim.App.1987).

In misdemeanor sentencing, a separate sentencing hearing is not mandatory but the court is required to provide the Defendant with a reasonable opportunity to be heard as to the length and manner of the sentence. Tenn.Code Ann. § 40–35–302(a). The sentence must be specific and consistent with the purposes and principles of the Criminal Sentencing Reform Act of 1989. Tenn. Code Ann. § 40–35–302(b). The trial court retains the authority to place the Defendant on probation either immediately or after a period of periodic or continuous confinement. Tenn.Code Ann. § 40–35–302(e). Misdemeanor sentencing is designed to provide the trial court with continuing jurisdiction and a great deal of flexibility. One convicted of a misdemeanor, unlike one convicted of a felony, is not entitled to a presumption of a minimum sentence. *State v. Creasy,* 885 S.W.2d 829, 832 (Tenn.Crim.App.1994).

The Defendants argue on appeal that the trial court erred in denying their request for probation. Among the factors applicable to the Defendants' application for probation are the circumstances of the offense, the Defendants' criminal record, social history and present condition, and the deterrent effect upon and best interest of the Defendant and the public. *State v. Gennoe,* 851 S.W.2d 833, 837 (Tenn.Crim.App.), *perm. to appeal denied, id.* (Tenn.1992);

*State v. Grear,* 568 S.W.2d 285 (Tenn.1978), *cert. denied,* 439 U.S. 1077, 99 S.Ct. 854, 59 L.Ed.2d 45 (1979). In determining the actual period of confinement for a misdemeanor sentence, the enhancement and mitigating factors may, in addition to the purposes and principles of the sentencing, be considered. Because especially mitigated or standard offenders convicted of Class C, D, or E felonies are presumed to be favorable candidates for alternative sentencing, the same presumption would logically apply to misdemeanors. *Gennoe,* 851 S.W.2d at 837; *see* Tenn.Code Ann. § 40–35–102(6). The ultimate burden for establishing an entitlement to probation, however, remains upon the applicant. *See* Tenn.Code Ann. § 40–35–303(b).

 Defendant Boyd was sentenced to six months in jail suspended after service of fifteen days, followed by six months of unsupervised probation, along with a five hundred dollar fine. Boyd has a previous conviction of DUI in Wilson County, Tennessee in 1992. The trial court found as a mitigating factor that there was no serious harm or bodily injury caused by Boyd's conduct. It found as an enhancement factor the fact that she was a co-owner of the business in question and therefore the leader in the commission of the offense. The trial court also found that some period of incarceration was necessary to avoid depreciating the offense and for general deterrence. In light of the Defendant's past criminal conviction and the need for deterrence and to avoid depreciating the crime, the trial court's decision to sentence her to fifteen days of incarceration does not constitute error or an abuse of discretion.

Defendant Lamky was sentenced to six months in jail suspended after service of seven days, followed by six months of unsupervised probation. The Defendant had no prior arrests or convictions. The court found as a mitigating factor the fact that her conduct neither caused nor threatened serious bodily injury. The court found no enhancement factors, but did emphasize the need for deterrence and avoiding depreciating the crime in requiring her to serve seven days in jail. Again, we find no error or abuse of discretion.

Defendant Wilson was sentenced to six months in jail suspended for each count after service of fifteen days, to be served concurrently, followed by six months of unsupervised probation. He had no past arrests or convictions. The court found no enhancement factors or mitigating factors, and emphasized the need for deterrence and to avoid depreciating the seriousness of his offenses. We find no error or abuse of discretion.

We again note that a trial judge has a certain amount of discretion in setting an appropriate sentence and that a presumption of correctness accompanies that determination. Furthermore, we do not intend to place trial court judges in a judicial straight-jacket by infringing on their discretionary powers when their actions are supported by valid considerations. *Moten v. State,* 559 S.W.2d 770, 773 (Tenn.1977); *see State v. Ashby,* 823 S.W.2d 166, 171 (Tenn.1991).

The Defendants' convictions for prostitution are reversed and those charges are dismissed. The Defendant Wilson's convictions of possession of marijuana and possession of cocaine and the sentences imposed therefor are affirmed.

WADE and PEAY, JJ., concur.