# IN THE COURT OF APPEALS OF TENNESSEE
## AT JACKSON

STATE OF TENNESSEE, ex rel, )
WILLIAM L. GIBBONS, )
)
      Petitioner/Appellee, ) Shelby Chancery No. 109795-2 R.D.
)
VS. ) Appeal No. 02A01-9710-CH-00247

# FILED

October 5, 1999

Cecil Crowson, Jr.
Appellate Court Clerk

)
SHERROD JACKSON, ROBERT )
WILLIAMS, NATHANIEL WILLIAMS, )
MIKE WILLIAMS, SHIRLEY BLALOCK )
and STEVEN CRAIG COOPER, )
)
      Defendants/Appellants. )


APPEAL FROM THE CHANCERY COURT OF SHELBY COUNTY
AT MEMPHIS, TENNESSEE
THE HONORABLE FLOYD PEETE, JR., CHANCELLOR

**MICHAEL F. PLEASANTS**
**FRIERSON M. GRAVES, JR.**
Memphis, Tennessee
Attorneys for Appellants, Sherrod Jackson,
Robert Williams, Nathaniel Williams and
Shirley Blalock

**REX L. BRASHER, JR.**
**BROWN, BRASHER & SMITH**
Memphis, Tennessee
Attorney for Appellant, Steven Craig Cooper

**JOHN KNOX WALKUP**
**Attorney General & Reporter**
**MICHAEL E. MOORE**
**Solicitor General**
**STEVEN A. HART**
**Special Counsel**
**Office of the Attorney General**
Attorneys for Appellee, State of Tennessee

Nashville, Tennessee

**AFFIRMED IN PART AND REVERSED IN PART**

**ALAN E. HIGHERS, J.**

**CONCUR:**

**W. FRANK CRAWFORD, P.J., W.S.**

**DAVID R. FARMER, J.**

Sherrod Jackson, Robert Williams, Nathaniel Williams, Mike Williams, Shirley Blalock, and Steven Craig Cooper (collectively "Appellants") appeal from the Chancery Court of Shelby County, which granted a temporary injunction, enjoining the Appellants from permitting "lap dancing" and from permitting employees or independent contractors from engaging in "lewd and obscene exhibition of genitals."

## I. Facts and Procedural History

Appellants allegedly own and/or operate an "adult cabaret" business in Memphis, Tennessee named "Pure Passion." As part of a police operation, members of the Memphis Police Department visited "Pure Passion" on several occasions wherein they witnessed various "acts" involving female dancers and male customers.[1] The results of the investigation formed the basis for an action that the State originally filed in July of 1997 in the Criminal Court of Shelby County, seeking an abatement (forfeiture and permanent injunction) of nuisance, and a writ of temporary injunction. Pursuant to local rules, the Criminal Court entered an order on July 8, 1997, which transferred the case to the Chancery Court. On September 3, 1997, the State filed a notice of amendment to the petition for abatement whereby the State dropped any request for forfeiture of real property and any relief based on public indecency or the common law. Subsequently, the State filed a First Amended Petition for Abatement of Nuisance with the Chancery Court, which

incorporated the amendment eliminating the aforementioned claims for relief.

A hearing was held on September 5, 1997 regarding the temporary injunction. At that hearing, the Chancellor expressed his reluctance to close down the business. Further, he expressed a predisposition to enjoin certain acts pending a full hearing. Ultimately, the final order that is the subject of this appeal was entered on September 26, 1997. In that order, the Chancellor determined that "lap dancing"[2] constituted an act of prostitution, and he issued a temporary writ of injunction enjoining such activity as a nuisance under T.C.A. § 29-3-105. Additionally, the Chancellor enjoined any "lewd and obscene exhibition of genitals."

## II. Law and Analysis

On appeal, the Appellants have raised three issues regarding the Chancellor's order enjoining "lap dancing" and "lewd and obscene exhibition of the genitals." Those issues are:
[3]

> 1) Whether the Chancellor erred in determining that "lap dancing" as conducted at the Appellants' place of business constitutes "prostitution," thereby subject to a temporary writ of injunction under T.C.A. § 29-3-105(a);
>
> 2) Whether the Chancellor's issuance of an injunction against future "lewd and obscene exhibition of the genitals" is an unconstitutional prior restraint in violation of the First Amendment to the United States Constitution or a violation of Appellants' Fourteenth Amendment Due Process rights.
>
> 3) Whether "lewdness" and "obscenity" have been elided from the Tennessee Nuisance statute, T.C.A. §§ 29-3-101 *et seq.,* and, if not, whether the inclusion of those terms makes the statute unconstitutionally overbroad or void for vagueness.

## A. Prostitution under T.C.A. § 29-3-101

Tennessee Code Annotated § 29-3-101(2) provides a definition of a "nuisance." That definition includes "any place in or upon which . . . , *prostitution*, . . . are carried on or permitted, . . . " Tenn. Code Ann. § 29-3-101(2) (emphasis added). The Code does not,

however, further define "prostitution" or describe the activities which that term might encompass. The Appellants do not take issue with prostitution being a triggering event for the finding of a nuisance. In that regard, they are not challenging the validity of T.C.A. § 29-3-101(2). Instead, we understand the Appellant's challenge to rest on two interdependent grounds: 1) under a proper interpretation, sexual penetration, oral sex, or homosexual sex is a prerequisite to a finding of "prostitution," and 2) since there were no allegations that these acts ever occurred at "Pure Passion," the Chancellor erred in finding that prostitution had taken place. To the contrary, the State contends, and the Chancellor agreed, that "lap dancing" itself, despite the absence of intercourse or penetration, constitutes prostitution.

The Appellants challenge both the legal definition of "prostitution" and the factual application in the present case. The construction of a statute and application of the law to the facts is a question of law. Beare Co. v. Tennessee Dep't of Revenue, 858 S.W.2d 906, 907 (1993) (citing Moto-Pep v. McGoldrick, 303 S.W.2d 326, 330 (1957). As such, there is no presumption of correctness attached to the Chancellor's decision. Capps v. Goodlark Medical Center, Inc., 804 S.W.2d 887, 888 (1991) (citing Katz v. Bilsky, 759 S.W.2d 420, 421-422 (Tenn. App. 1988). We are, therefore, charged with the responsibility of determining the parameters of the word "prostitution" as used in T.C.A. § 29-3-101(2) and whether the facts of this case fall within those parameters.

The standard for determining prostitution has previously been the subject of dispute in this state. See State v. Boyd, 925 S.W.2d 237 (Tenn. Crim. App. 1995). The court's role in statutory interpretation is to ascertain and effectuate the legislature's intent. State v. Sliger, 846 S.W.2d 262, 263 (Tenn. 1993). The legislative intent should be derived from the plain and ordinary meaning of the statutory language when a statute's language is unambiguous. Carson Creek Vacation Resorts, Inc. v. Department of Revenue, 865 S.W.2d

1, 2 (Tenn. 1993). However, when a statute's language is ambiguous and the parties legitimately derive different interpretations, we must look to the entire statutory scheme to ascertain the legislative intent. Owens v. State, 908 S.W.2d 923, 926 (Tenn. 1995). In the present case, the parties are entirely reasonable in their alternative positions. The statute does not provide a clear answer to what acts constitute "prostitution." As such, we must undertake to interpret the statute under the recognized rules of statutory construction, considering the entire statutory scheme.

In endeavoring to determine the meaning of the term "prostitution," we can look to other sections of the Tennessee Code. See Lyons v. Rasar, 872 S.W.2d 895, 897 (Tenn. 1994) (the construction of one statute, if doubtful, may be aided by the language and purpose of another statute dealing with the same subject). In their briefs, both parties have referred to T.C.A. § 39-13-512. This section defines "prostitution" in the criminal context as "engaging in, or offering to engage in, sexual activity as a business . . . " Tenn. Code Ann. § 39-13-512(5). "Sexual activity," in turn, means "any sexual relations including homosexual sexual relations." Tenn. Code Ann. § 39-13-512(6).

We are left with a two-prong analysis. We must first determine what qualifies as a "sexual activity." Second, we must determine whether the "sexual activity," if found to exist, is conducted as a business. One would hesitate long to argue that the activity in Appellants' place of business, whatever the nature of that activity, is undertaken as anything other than a business. No authority need be cited for the proposition that "lap dancing," in such establishments, will always involve the exchange of money between "customer" and "dancer." In this regard, if the "lap dancing" conducted at Appellants' place of business is found to constitute "sexual activity," undoubtedly such would qualify as an act of prostitution under the statute.

We note that certain words or terms are defined elsewhere in the Code, but are conspicuous by their absence in the definition of prostitution. Of particular significance, the

term "sexual penetration" is not included in the definition of prostitution. That term is, however, defined elsewhere as "sexual intercourse, cunnilingus, fellatio, anal intercourse, or any other intrusion, however slight, of any part of a person's body or of any object into the genital or anal openings of the victim's, the defendant's, or any other person's body, but emission of semen is not required." Tenn. Code Ann. § 39-13-501(7). We find no indication that "sexual penetration" or "sexual intercourse" are applicable to the section at issue in the present case, namely T.C.A § 39-13-512. The clear inference is that the Legislature did not intend for prostitution to be limited to those instances where sexual penetration or intercourse occurs. Appellants point out that past prostitution statutes, particularly the 1943 version, have referred to "sexual intercourse." Appellants' Brief at 47. Additionally, they state that the 1986 version used the terms "sexual intercourse," "deviate sexual intercourse," and "sexual contact." Appellants assert that by taking out the specific references to intercourse or "sexual contact," the Tennessee General Assembly limited the conduct that would be defined as prostitution. We disagree. The fact that such requirements were previously in the statute but were taken out, shows that the Legislature intended to expand the definition of prostitution beyond intercourse. We read the statute to include acts that would not have been included under prior definitions (*i.e.,* acts not involving intercourse or penetration). Had the Legislature intended to equate prostitution with intercourse, we must presume that language expressing such intent would be found. As such, we reject Appellants' argument that the current version of the definition of prostitution should be read to require sexual intercourse, oral sex, or homosexual relations.

We are not alone in rejecting the interpretation that Appellants thrust upon the term "prostitution." In State v. Boyd, the Court of Criminal Appeals, although reversing the conviction of two female "dancers" for prostitution, declined to interpret the word "prostitution" as requiring any sexual penetration. 925 S.W.2d 237 (Tenn. Crim. App. 1995). In Boyd, the two female defendants were employees of an escort service and had gone to a

hotel room with an undercover police officer. Id. at 241. There, they removed each other's clothing and began to touch each other's buttocks. Id. One defendant placed her face "near" the other's genital area and later proceeded to "suck" the officer's finger. Id. On appeal, the defendants argued that the evidence was insufficient to convict them of prostitution.[4] Id.

The issue in Boyd was whether the prostitution statute gave adequate warning of what activities or actions were prohibited under the guise of "sexual relations."[5] The court briefly surveyed the range of activities that might or might not be "sexual relations." Id. at 243 (citing People v. Love, 111 Cal.App.3d Supp. 1, 168 Cal.Rptr. 591 (Super.Ct. 1980) (finding the fondling of genitals, buttocks, and breasts to be "sexual relations"); People v. Hill, 103 Cal.App.3d 525, 163 Cal.Rptr. 99 (1980) (nude modeling held not to be prostitution)). The Boyd court went on to state succinctly what we believe to be the crucial issue in the present case: "Although many people would agree that actual intercourse is not necessary to constitute 'sexual relations,' there may be much disagreement as to which sexually arousing or suggestive acts short of intercourse constitute sexual relations and which do not." Id. at 244.

The Court of Criminal Appeals reversed the conviction of the defendants because, in essence, the actions of the defendants did not amount to "sexual relations" as the court interpreted the statute. The court stated:

> There was some contact between the dancers and between the dancer and the patron, but there was no touching of the genitals between the dancers and only the finger of the patron was touched. The question is whether the statute gave the dancers adequate warning that their conduct amounted to "sexual relations." While there is no doubt that the dancers intend for their act to be sexually arousing and suggestive of more intimate acts, we conclude that the language of the statute did not give them or anyone else sufficient warning that those acts would constitute 'sexual relations' such as is prohibited by the prostitution statute.

Id.

While we fully agree with the analysis used by the Court of Criminal Appeals, the

present case presents a distinct factual difference from that dealt with in Boyd. Specifically, the contact between dancers and customers at "Pure Passion" and the contact in the Boyd case are clearly distinct. In Boyd, the dancer only sucked the finger of the undercover police officer. However, in the present case, the record shows that customers were able to touch the bare breasts and buttocks of the dancers, as well as there being contact between the customer's groin area and the dancer's hands and/or buttocks. In short, the present case is distinguishable from Boyd in both the quantity of contact and sexual quality of that contact.

The legislative intent or purpose is to be ascertained primarily from the natural and ordinary meaning of the language used, when read in the context of the entire statute, and without any forced or subtle construction to limit or extend the import of the language. Worrall v. Kroger Co., 545 S.W.2d 736, 738 (Tenn. 1977); City of Caryville v. Campbell County, 660 S.W.2d 510, 512 (Tenn. App. 1983). We must enforce the statute as written. The statute contains no requirement of penetration or intercourse; therefore, we decline the opportunity to craft such a requirement. The activities described in the record as taking place at Appellants' place of business clearly satisfy the standard of "sexual activity as a business." As such, we find no error in the Chancellor's ruling that "lap dancing," as conducted at the Appellants' place of business, constituted "prostitution" as that term is used in T.C.A. § 39-13-512. The Chancellor's issuance of an injunction against such activity was proper pursuant to T.C.A. § 29-3-105(a).[6]

## B.    Lewdness and Obscenity

The Appellants also argue that the Chancellor erred in granting the temporary writ of injunction in regards to "lewd and obscene exhibition of the genitals." This argument is based upon two points. First, Appellants assert that the injunction operates as an unconstitutional prior restraint in violation of the First Amendment to the United States Constitution. Second, Appellants argue that "lewdness" and "obscenity" have been elided

from the nuisance statute, and if this is not so, they urge this court to strike down those provisions as overbroad and/or void for vagueness. This second point presents a myriad of seemingly conflicting case law. See generally Airways Theater, Inc. v. Canale, 366 F.Supp 343 (1973); Davis-Kidd Booksellers v. McWherter, 866 S.W.2d 520 (Tenn. 1993); State *ex rel*. Webster v. Daugherty, 530 S.W.2d 81 (Tenn. App. 1975); State of Tennessee *ex rel*. Dossett v. Richland Bookmart, Inc., 1990 W.L. 209331 (Tenn. App. E.S., Dec. 21, 1990). We find no need, however, to reach the Appellants' argument attacking the validity of the statute on the grounds of vagueness and/or overbreadth.[7] We find the Chancellor's order in regards to "lewd and obscene exhibition of the genitals" to be a prior restraint in violation of the First Amendment to the United States Constitution.

We begin by recognizing that nude dancing is entitled to some measure of First Amendment protection. See generally Schad v. Mount Ephraim, 452 U.S. 61, 101 S.Ct. 2176, 68 L.Ed.2d 671 (1981); Doran v. Salem Inn, Inc., 422 U.S. 922, 95 S.Ct. 2561, 45 L.Ed.2d 648 (1975); California v. LaRue, 409 U.S. 109, 93 S.Ct. 390, 34 L.Ed.2d 342 (1972) . Although we do not consider the extent of that protection to be important to the present case, the fact that such protection does exist is of vital importance. Based upon the record, we find no mention of specific activities which were deemed to be "lewd and obscene." In fact, the order makes only two references to "lewd and obscene exhibition of genitals."[8] We realize that the intent of the order was to enjoin specific acts. However, at present, there is no way to know what those acts might be. Simply stated, the injunction attempts to prohibit a future undescribed activity. There has been no determination that any act sought to be enjoined is in fact obscene. More to the point, we do not even know what those acts might be. As appellants note in their brief, "[a]n injunction which incorporates the statutory definition of obscenity . . . merely begs the question." In this case, the Chancellor's order merely incorporates the phrase "lewd and obscene." As such, knowing the specific acts that are enjoined is impossible. In light of the fact that the Appellants business is

entitled to some measure of First Amendment protection, it appears that the injunction will infringe on protected rights.

The United States Supreme Court, in Vance v. Universal Amusement Co., Inc., noted that the burden of supporting an injunction against a future exhibition is even heavier than the burden justifying the imposition of a criminal sanction. 445 U.S. 308, 316, 100 S.Ct. 1156, 1161, 63 L.Ed.2d 413 (1980) (citing Bantam Books, Inc. v. Sullivan, 372 U.S. 58, 83 S.Ct. 631, 9 L.Ed.2d 584 (1963); New York Times Co. v. United States, 403 U.S. 713, 714, 91 S.Ct. 2140, 29 L.Ed.2d 822 (1971); Organization for a Better Austin v. Keefe, 402 U.S. 415, 419, 91 S.Ct. 1575, 29 L.Ed.2d 1 (1971); Carroll v. President and Comm'rs of Princess Anne, 393 U.S. 175, 181, 89 S.Ct. 347, 21 L.Ed.2d 325 (1968); Near v. Minnesota *ex rel*. Olson, 283 U.S. 697, 716, 51 S.Ct. 625, 75 L.Ed. 1357 (1931). The present injunction impermissibly places the burden on the Appellants by forcing them to choose one of two courses of action. They may continue to operate their business in the same manner as always and risk a contempt proceeding, or, alternatively, they may attempt to discern the scope of the injunction and limit the activities in their business accordingly. Either choice presents risks to the Appellants because there is no way to know which acts will or will not be allowed. In essence, the State becomes the decision-maker as to what is " lewd and obscene" due to the absence of a judicial determination.

The Tennessee Supreme Court dealt with a similar issue in News Mart, Inc. v. State *ex rel*. Webster, 561 S.W.2d 752 (1978). In that case, the trial court issued a permanent injunction against the showing of: "(1) the untitled motion pictures 'described in the complaint and the affidavit of Captain Roy Whitfield' filed as an exhibit to the complaint, and (2) 'any film, picture, publication, or other matter which depicts explicit acts of fellatio, cunnilingus, and excretory function of the human body.'" News Mart, 561 S.W.2d at 753. The Tennessee Supreme Court struck down the injunction pertaining to the future showing of

*unnamed* and *undescribed* films finding that such an injunction would be a prior restraint on the freedom of expression.[9] Id. (emphasis added). We find nothing in the present case to distinguish the News Mart decision to the extent the present injunction purports to enjoin future unspecified acts. In fact, the injunction struck down in News Mart was, if anything, more specific than the injunction in the present case, yet was still found to be an unconstitutional prior restraint.

In its present posture, this case presents an unconstitutional prior restraint in violation of the First Amendment to the United States Constitution. See Near v. Minnesota *ex rel* Olson, 283 U.S. 697, 51 S.Ct. 625, 75 L.Ed. 1357 (1931); News Mart v. State *ex rel* Webster, 561 S.W.2d 752 (1978). Under the injunction, the Appellants could be found guilty of contempt even though no court had ruled on the lewdness or obscenity *of a specific act.* See Freedman v. State of Maryland, 380 U.S. 51, 60, 85 S.Ct. 734, 739, 13 L.Ed.2d 649 (1965) (emphasis added) (citing, with disapproval, the fact that "[u]nder the statute, appellant could have been convicted if he had shown the film after unsuccessfully seeking a license, even though no court had ever ruled on the obscenity of the film."). As such, we find the deficiency in regard to this issue to be the specificity, or lack thereof, in the Chancellor's order as opposed to any statutory problems relating to "lewdness" or "obscenity." The Chancellor in this case attempted to prohibit acts that had not yet been declared obscene, and more importantly, that may ultimately be determined not to be obscene. The justification for prohibiting such restraints may be summed up in noting that:

> a free society prefers to punish the few who abuse rights of speech after they break the law than to throttle them and all others beforehand. It is always difficult to know in advance what an individual will say, and the line between legitimate and illegitimate speech is often so finely drawn that the risks of freewheeling censorship are formidable.

Vance, 445 U.S. at 1161, n. 13 (citing Speiser v. Randall, 357 U.S. 513, 78 S.Ct. 1332, 2 L.Ed.2d 1460 (1958); Southeastern Promotions, Ltd. v. Conrad, 420 U.S. 546, 558-559, 95

S.Ct. 1239, 1246, 43 L.Ed.2d 448 (1975).

Accordingly, we reverse that part of the Chancellor's order relating to "lewd and obscene exhibition of the genitals."

### III. Conclusion

The judgement entered by the Chancery Court is hereby affirmed in part and reversed in part. Costs of this appeal are taxed one-half to each party, for which execution may issue if necessary.

_____  HIGHERS, J.

CONCUR:

_____
CRAWFORD, P.J., W.S.

_____
FARMER, J.