IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
April 10, 2001 Session

## STATE OF TENNESSEE v. MARLO JONES

**Direct Appeal from the Criminal Court for Lauderdale County**
**No. 6909     Joseph H. Walker, Judge**

---

**No. W2000-01565-CCA-R3-CD  - Filed May 29, 2001**

---

The defendant was convicted by a jury of aggravated criminal trespass, attempted aggravated assault, and two counts of felony reckless endangerment. The trial court sentenced the defendant to concurrent sentences of eleven months and twenty-nine days for aggravated criminal trespass, two years for attempted aggravated assault, and one year each for both counts of felony reckless endangerment. The defendant was granted probation after service of 120 days. In this appeal, the defendant challenges the trial court's denial of full probation. After a thorough review of the record, we affirm the sentence imposed by the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

JOE G. RILEY, J., delivered the opinion of the court, in which JOHN EVERETT WILLIAMS and ROBERT W. WEDEMEYER, JJ., joined.

J. Thomas Caldwell, Ripley, Tennessee, for the appellant, Marlo Jones.

Paul G. Summers, Attorney General and Reporter; Mark E. Davidson, Assistant Attorney General; Elizabeth T. Rice, District Attorney General; and Tracey A. Brewer, Assistant District Attorney General, for the appellee, State of Tennessee.

### OPINION

The defendant was convicted of aggravated criminal trespass, attempted aggravated assault, and two counts of felony reckless endangerment and received an effective sentence of two years, with probation after service of 120 days. In this appeal, the defendant challenges the trial court's denial of full probation. We affirm.

# FACTS

Evon Reed, David Willis' girlfriend, testified at trial that on November 14, 1999, Willis arrived at her home at approximately 11:30 p.m. Reed, her eleven-month-old child, and Willis retired to her bedroom at approximately 12:00 a.m. At approximately 3:00 a.m., Reed was awakened by a "pounding" on her door, and the defendant, with whom Willis also had a romantic relationship, stated, "[t]ell David to bring his ass outside."

Reed, without unlocking the door, returned to the bedroom to awaken Willis. Before she could reach Willis, Reed heard the defendant kick in her back door. Reed then closed and locked her bedroom door. When the defendant reached the locked bedroom door, she yelled, "[y]ou know what I got and I'll blow this mother f---er up." Willis then informed her that a baby was with them in the bedroom and pleaded that she go outside. The defendant then responded that she "didn't give a damn," because they "all was [sic] going to die tonight." The defendant then fired her weapon through the bedroom door. Reed placed her infant baby under the bed, then she and Willis pushed the dresser in front of the bedroom door to block the defendant's entry. Reed then joined her baby under the bed.

The defendant stated that she did not want to harm Willis but only wanted Reed. The defendant discharged her weapon again, and Willis yelled that he was hit. The defendant then inquired, "I shot you, David?" The defendant then exited the home, went to the bedroom window, shot it out, and inquired, "[w]here is that bitch at?" Willis, already bleeding, climbed out of the broken window. The defendant then apologized to Willis and said she loved him. Willis left with the defendant, who carried him to the hospital.

Willis testified that he never heard forcible entry through the back door of the residence; the defendant never threatened anyone; the defendant was unaware of the infant's presence in the bedroom; he was never shot; the window was broken by him when he attempted to leave; and the broken window caused his injury.

The defendant testified that she had been living with Willis for five years preceding this incident. She testified she did not forcibly enter the residence but entered through a door that was "cracked" open. She denied knowing the baby was in the bedroom and stated her weapon accidentally discharged on two occasions while she was beating on the bedroom door. She testified that she helped Willis out of the bedroom window and took him to the hospital.

# SENTENCING

The defendant contends that the trial court's denial of full probation was erroneous. We disagree.

## A. Standard of Review

This Court's review of the sentence imposed by the trial court is *de novo* with a presumption of correctness. Tenn. Code Ann. § 40-35-401(d). This presumption is conditioned upon an affirmative showing in the record that the trial judge considered the sentencing principles and all relevant facts and circumstances. State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991).

A defendant is eligible for probation if the sentence received by the defendant is eight years or less, subject to some statutory exclusions. Tenn. Code Ann. § 40-35-303(a). An especially mitigated or standard offender convicted of a Class C, D or E felony is presumed to be a favorable candidate for alternative sentencing in the absence of evidence to the contrary. Tenn. Code Ann. § 40-35-102(6). However, although a defendant may be presumed to be a favorable candidate for alternative sentencing, the defendant has the burden of establishing suitability for total probation. State v. Boggs, 932 S.W.2d 467, 477 (Tenn. Crim. App. 1996); Tenn. Code Ann. § 40-35-303(b). Even though probation must be automatically considered, "the defendant is not automatically entitled to probation as a matter of law." Tenn. Code Ann. § 40-35-303(b) Sentencing Commission Comments; State v. Hartley, 818 S.W.2d 370, 373 (Tenn. Crim. App. 1991). A defendant seeking full probation bears the burden on appeal of showing the sentence imposed is improper, and that full probation will be in the best interest of the defendant and the public. State v. Baker, 966 S.W.2d 429, 434 (Tenn. Crim. App. 1997).

In determining whether to grant or deny probation, a trial court should consider the circumstances of the offense, the defendant's criminal record, the defendant's social history and present condition, the need for deterrence, and the best interest of the defendant and the public. State v. Grear, 568 S.W.2d 285, 286 (Tenn. 1978); State v. Boyd, 925 S.W.2d 237, 244 (Tenn. Crim. App. 1995). The defendant's lack of credibility is also an appropriate consideration and reflects on a defendant's potential for rehabilitation. State v. Nunley, 22 S.W.3d 282, 289 (Tenn. Crim. App. 1999).

## B. Sentencing Hearing

Evidence at the sentencing hearing revealed that the defendant was 29 years of age, was a high school graduate, had no prior criminal record, and was gainfully employed. The defendant admitted she had done wrong, but again denied intentionally shooting into the bedroom. Two witnesses testified as to her good reputation.

The trial court found this to be a "frightening crime" in which the defendant fired shots into the bedroom with three people inside, each of whom could have been killed. The trial court concluded that the seriousness of the offense justified 120 days of jail time followed by supervised probation.

## C.  Full Probation v. Split Confinement

The trial court sentenced the defendant to split confinement, a form of alternative sentencing, and noted that the seriousness of the offense dictated that some amount of jail time was appropriate. The record readily supports the trial judge's conclusion.  *See* Tenn. Code Ann. § 40-35-103(1)(B). Considering the seriousness of this violent offense, namely that two adults as well as one infant child could have been killed or seriously injured, the defendant's sentence of 120 days confinement is justified.  It is further apparent that the trial court did not consider defendant's testimony at trial and at the sentencing hearing truthful relating to whether she intentionally shot through the bedroom door.  *See* Nunley, 22 S.W.3d at 289 (holding the defendant's lack of credibility is an appropriate consideration and reflects on a defendant's potential for rehabilitation).  The defendant has failed to prove that full probation will be in the best interest of the defendant and the public. *See* Baker, 966 S.W.2d at 434.  In view of the findings by the trial court and our review of the record, we conclude the trial court properly denied total probation.

## CONCLUSION

Based upon our review of the record, the sentence imposed by the trial court is affirmed.

_____
JOE G. RILEY, JUDGE

-4-