# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE
### Assigned on Briefs February 6, 2001

## STATE OF TENNESSEE v. RONNIE DULWORTH

**Appeal from the Criminal Court for Overton County**
**No. 3846      Lillie Ann Sells, Judge**

_____

**No. M2000-01681-CCA-R3-CD  - Filed April 6, 2001**

_____

The defendant appeals from his conviction for assault, contesting the sufficiency of the evidence and the manner of service of his sentence. We affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

JOSEPH M. TIPTON, J., delivered the opinion of the court, in which JERRY L. SMITH and JOE G. RILEY, JJ., joined.

James D. White, Jr., Celina, Tennessee, for the appellant, Ronnie Dulworth.

Paul G. Summers, Attorney General and Reporter; Clinton J. Morgan, Counsel for the State; Lawrence Ray Whitley, District Attorney General, Pro Tempore; and C. Wayne Hyatt, Assistant District Attorney General, Pro Tempore, for the appellee, State of Tennessee.

## OPINION

The defendant, Ronnie Dulworth, appeals from his conviction by an Overton County Criminal Court jury for assault, a Class A misdemeanor. The trial court sentenced the defendant to eleven months, twenty-nine days in the county jail at seventy-five percent, ordering all but forty days of the sentence to be suspended and served on probation. The defendant contends that the evidence is insufficient to support his conviction because the state did not prove that he acted recklessly and did not disprove that he acted in self-defense. The defendant also contends that the trial court improperly denied him full probation.

This case arises from an assault upon Ronnie Carmack. At trial, Mary Paul, Ronnie Carmack's sister-in-law, testified as follows: On September 20, 1997, she, her sister, her daughter, and her niece stopped at Brown's Grocery in Allons, Tennessee. While she was at the gasoline pump, her daughter and niece went into the store, and her sister, Tammy Bullock, stayed in the car. She saw the victim walk out of the store, and they spoke briefly. As the victim walked toward his car, which was parked in the second parking place to the right of the store's entrance, she saw the

defendant behind and to the left of the victim. When the victim looked over his left shoulder, the defendant hit the victim on the right cheek. The defendant went to his car and drove toward the road but stopped, enabling Ms. Bullock to see his license plate. After a few seconds, the defendant drove away.

Ms. Paul testified that it looked like the defendant was holding something in his hand when he hit the victim. She stated that the victim's eye was swollen and bleeding and that the injury required surgery. She said that she was close enough to the location of the assault that she could have heard a conversation of normal volume between the defendant and victim, but she did not hear any words exchanged between them. Also, she did not see the victim make any threats or gestures toward the defendant.

Ronnie Carmack, the victim, testified as follows: On September 20, 1997, he went to Brown's Grocery, and while he was inside the store, he talked with his two nieces and saw his sisters-in-law outside. When he left the store, he talked briefly with his sister-in-law, Ms. Paul, who was pumping gasoline. As he was walking to his car, he heard a soft drink being purchased from a machine outside the store. Then a man behind him asked him if he was Ronnie, and when he turned around, the man hit him in the right eye. He did not speak to the man and was not face-to-face with him. He did not remember anything else about that day, and he did not know the defendant was the perpetrator until the police matched the license plate number to the defendant's car.

Mr. Carmack testified that he weighed one hundred sixty-five pounds on the day of the assault. He said that his injury required surgery and that his right eye was still numb and was permanently damaged in that it would not open completely. He stated that he had known the defendant for more than twenty years but that he had not seen the defendant since 1993. He said that he and the defendant used to drink together but that he went to rehabilitation and quit drinking in 1993. He stated that shortly after completing his rehabilitation, the defendant came to his house, but he asked the defendant to leave. The defendant complied and did not appear to be angry.

On cross-examination, Mr. Carmack stated that at the time of the assault, if someone had been standing at the soft drink machine closest to the store's entrance, then the person would have been next to the left front fender of his car. He also acknowledged that he had filed a civil suit against the defendant.

Dr. Ronald Barton, a plastic surgeon, testified that he treated the victim in September and October 1997. He said that the victim's cheek bone was broken and displaced and that he performed surgery to move the cheek bone to its original position. He stated that the injuries indicated that the victim must have been hit with a significant force, but he could not determine whether the victim was hit with a fist or a weapon. He said that the victim's eyelids were no longer, and would never be, symmetrical.

Tammy Bullock, the victim's sister-in-law, testified as follows: On September 20, 1997, she, her sister, her daughter, and her niece stopped at Brown's Grocery. Her daughter and niece went into

the store, and her sister, Ms. Paul, was pumping gasoline. She stayed in the front passenger seat of her sister's car and noticed a person driving a white car, which was later determined to be the defendant's, pull out of a parking place on one side of the store, drive to the front of the store, and park in the place next to the victim's car. She saw the victim leave the store and heard him talking to her sister. Then she saw the defendant approach the victim from behind, and as the victim turned around, the defendant hit him on the right side of his face with a soft drink can. The defendant then went to his car and started to drive away, but stopped in the parking lot for a few seconds, which enabled her to write down his license plate number.

Ms. Bullock testified that the car window was partially down and that she observed the assault through the mirror on the passenger-side door. She said that she was using the mirror to watch for her daughter and niece to come out of the store. She stated that she did not hear the defendant or the victim say anything to each other.

The defendant testified as follows: He, his wife, and his son were returning from buying dinner, and he stopped at Brown's Grocery to buy mouthwash for his toothache. He parked to the left of the store in the parking place furthest from the store's entrance and gave his son, Shane Dulworth, money to buy the mouthwash. When his son returned, he drove toward the road but decided that he wanted a soft drink, so he drove around the gasoline pumps and parked in front of the drink machines that were outside the store. After he bought a drink, he turned and asked his wife and son if they wanted drinks. They responded that they did not, and then a man, whom he did not recognize at the time, ordered him to get out of the way, calling him a profane name. When he turned around, he was face-to-face with the man, who then said, "Yeah, you." He was scared because of the man's tone of voice; the man's appearance, specifically the fact that his eyes were dilated; and the fact that he thought he saw something in the man's hand. Because he thought that the man was going to hit, stab, or shoot him, he hit the man with his left hand. He then got into his car and started to leave but stopped when a woman approached the car. When the woman walked away from the car, he left.

The defendant testified that he weighed about one hundred ninety pounds. He said that he met the victim twenty-six years ago but that he had not seen the victim in over twenty years. He denied being at the defendant's house in 1993 and being asked to leave. He said that when he was face-to-face with the victim, the victim was not blocking his path to his car, and he did not ask his son, who weighed about one hundred eighty pounds at the time, for help. He admitted that he did not see the victim with a knife or a gun and that he did not know what the victim was holding. He said that he had a soft drink in his right hand when he hit the victim.

Shane Dulworth, the defendant's son, and Shirley Dulworth, the defendant's wife, provided accounts substantially similar to that given by the defendant. Shane Dulworth testified that he saw the victim leave the store and did not hear the victim talk to anybody other than the defendant. He said that he heard the victim call the defendant a profane name and that the victim looked aggressive and agitated. Shirley Dulworth also testified that the victim called the defendant a profane name and ordered him to move. She stated that the victim had a weird look on his face and appeared agitated.

She said that the victim had his hand in his pocket and looked like he was about to do something to the defendant.

## I. SUFFICIENCY OF THE EVIDENCE

The defendant contends that the evidence is insufficient to support his conviction for assault because the state did not prove that he acted recklessly and did not disprove that he acted in self-defense. The state contends that the evidence is sufficient.

Our standard of review when the sufficiency of the evidence is questioned on appeal is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979). We do not reweigh the evidence but presume that the jury has resolved all conflicts in the testimony and drawn all reasonable inferences from the evidence in favor of the state. See State v. Sheffield, 676 S.W.2d 542, 547 (Tenn. 1984); State v. Cabbage, 571 S.W.2d 832, 835 (Tenn. 1978). Questions about witness credibility were resolved by the jury. See State v. Bland, 958 S.W.2d 651, 659 (Tenn. 1997).

To establish that the defendant assaulted the victim, the state must have proven that the defendant intentionally, knowingly, or recklessly caused bodily injury to the victim. Tenn. Code Ann. § 39-13-101(a)(1); see § 39-11-106(a)(2) (defining bodily injury). "Reckless," which is the least culpable mental state that the state needed to prove, is "when the person is aware of but consciously disregards a substantial and unjustifiable risk" that the result will occur. Tenn. Code. Ann. § 39-11-302(c).

In this case, the evidence viewed in the light most favorable to the state reveals that the defendant approached the victim from behind and asked him if he was Ronnie. When the victim turned around, the defendant, without saying anything else, hit the defendant's cheek, breaking and displacing it. A rational jury could have found beyond a reasonable doubt that the defendant assaulted the victim. Moreover, the evidence viewed in this light reveals that self-defense was not an issue. Accordingly, the state did not fail to disprove that the defendant acted in self-defense.

## II. FULL PROBATION

The defendant contends that the trial court should have granted him full probation, arguing that the assault, at worst, was a reckless action. The defendant also argues that his good social history, work history, and lack of criminal history favor full probation. The state contends that the trial court properly sentenced the defendant.

At the sentencing hearing, the victim testified that the defendant broke his cheek bone, which required reconstructive surgery. He stated that, as a result of the assault, his right eye no longer

opened completely, his eyesight was worse, and his eyes were more sensitive to wind and sunshine. He said that these injuries were permanent and that they forced him to change to a lower paying job.

The defendant testified that he had only been arrested one time, for driving under the influence fifteen years ago, and that he had maintained employment since he was fifteen years old. He said that he had learned from this case to stop and think about situations and not to react too quickly. He testified that he was acting in self-defense when he hit the victim.

The trial court sentenced the defendant to eleven months, twenty-nine days in the county jail at seventy-five percent, ordering all but forty days of the sentence to be suspended and served on probation. The court found that some amount of incarceration was appropriate because of the severity of the injuries. See Tenn. Code Ann. § 40-35-114(6). The court also noted that it did not believe that the assault was just a fast reaction or surprise attack by the defendant.

In reviewing whether the trial court properly sentenced the defendant, we conduct a de novo review of the record with a presumption of correctness. Tenn. Code Ann. § 40-35-401(d). This presumption of correctness is conditioned upon the affirmative showing that the trial court considered the relevant facts, circumstances, and sentencing principles. State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991). In misdemeanor sentencing, the trial court is not required to place specific findings on the record. State v. Troutman, 979 S.W.2d 271, 274 (Tenn. 1998).

A defendant seeking full probation bears the burden on appeal of showing that the sentence imposed is improper and that full probation will be in the best interest of the defendant and the public. State v. Baker, 966 S.W.2d 429, 434 (Tenn. Crim. App. 1997). In determining whether to grant or deny probation, a trial court should consider the circumstances of the offense, the defendant's criminal record, the defendant's social history and present condition, and the need for deterrence. State v. Boyd, 925 S.W.2d 237, 244 (Tenn. Crim. App.1995).

In this case, the record shows that the trial court considered the defendant's good social and work history. In denying full probation, the trial court gave little weight to the defendant's minor criminal history but emphasized that the defendant inflicted severe, permanent injuries. The court commented that it did not believe the defendant's claim that he just reacted too quickly. Moreover, the nature of the offense – approaching the victim from behind and, as the victim turned around, hitting him in the face with a force great enough to break and displace his cheek bone – supports the denial of full probation. The defendant has not carried his burden of showing that his sentence of split confinement is improper.

Based upon the foregoing and the record as a whole, we affirm the judgment of the trial court.

_____
JOSEPH M. TIPTON, JUDGE