IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs October 30, 2001

## STATE OF TENNESSEE v. JOSEPH S. HAYES

**Appeal from the Criminal Court for Sullivan County**
**No. S42789, S42790, S42791     R. Jerry Beck, Judge**

**No. E2001-00868-CCA-R3-CD**
**January 7, 2002**

The defendant, Joseph S. Hayes, appeals the Sullivan County Criminal Court's denial of alternative sentencing in the defendant's three Class B misdemeanor convictions of assault. Finding no reversible error, we affirm.

**Tenn. R. App. P. 3; Judgment of the Criminal Court Affirmed.**

JAMES CURWOOD WITT, JR., J., delivered the opinion of the court, in which DAVID G. HAYES and JOHN EVERETT WILLIAMS, JJ., joined.

Thomas C. Jessee, Johnson City, Tennessee, and Thomas Dossett, Kingsport, Tennessee, for the Appellant, Joseph S. Hayes.

Paul G. Summers, Attorney General & Reporter; Angele M. Gregory, Assistant Attorney General; H. Greeley Wells, Jr., District Attorney General; and James Goodwin, Assistant District Attorney General, for the Appellee, State of Tennessee.

### OPINION

The defendant, a medical physician, was indicted on five counts of sexual battery and one count of assault. These counts alleged 1998 offenses involving three female patients. The defendant made a plea agreement with the state, which provided that the defendant would enter "best interest," *nolo contendere* pleas to three counts of Class B misdemeanor assault, one per victim. *See* Tenn. Code Ann. § 39-13-101(a)(3) (1997) (Class B misdemeanor committed by one who "[i]ntentionally or knowingly causes physical contact with another and a reasonable person would regard the contact as extremely offensive or provocative"). According to the agreement terms, the defendant would receive concurrent sentences of six months in each case, but the manner of service of the effective six months sentence would be determined by the trial court. After a sentencing hearing, the trial court ordered the defendant to serve the sentence by confinement in the county jail. The defendant now appeals this ruling and posits that he should have been awarded probation or some other alternative to confinement.

The sentencing hearing consisted of the arguments of counsel and submission of the presentence investigative report and a diagnostic report from Behavioral Medicine Institute of Atlanta (BMI). The presentence report revealed that the defendant was 55 years of age at the time of sentencing, married, and, at the time the offenses were committed, employed as a licensed physician by Med-Choice in Kingsport. The victims of these offenses complained that during 1998 medical examinations performed on them by the defendant at Med-Choice, he inappropriately touched their breasts, and in some cases, their pubic areas.

The report stated that the defendant formerly served in the United States Navy, where as a family physician he attained the rank of Lieutenant Commander. He received an honorable discharge in 1977.

In 1991, the defendant's medical license was revoked following the Tennessee Department of Health's summary suspension for "immoral or unprofessional conduct; distribution of intoxicating liquors or drugs for other than lawful purposes." The defendant's license was reinstated in 1993. The 1991 license revocation may have been based upon the events that led to his 1992 convictions of casual exchange of a controlled substance, delivery of a legend drug, and felony possession with intent to deliver controlled substances.

In addition to these 1992 convictions, the defendant was also convicted in 1991 of assault and in 1992 of resisting arrest and assault. The defendant reported to the presentence investigator that in 1979 he began using marijuana and later began "self-prescribing" Halcion. Because of the drug abuse, the defendant completed a regimen of drug rehabilitation.

A report of a psychological counselor at Child and Adult Clinical Associates (CAC) in Knoxville was contained within the presentence report. According to CAC, the defendant later got "into trouble due to a history of several extramarital affairs, some of which constituted professional sexual misconduct (PSM) because they occurred with patients, nurses, or other staff." The Tennessee Physicians Health Program referred the defendant to BMI in August, 1999. Following "successful treatment" in Atlanta, the defendant was referred in November 1999 to CAC for "maintenance treatment." According to the CAC report, he has fulfilled expectations and has begun practicing medicine part-time in South Carolina, operating under stringent rules of supervision concerning his treatment of female patients.

The BMI report indicated that the defendant's "professional sexual misconduct" could be considered an impulse control disorder. The defendant also evinced depression, but his drug and alcohol abuse was in remission. During his stay at BMI, the defendant initially "failed to appreciate the potential consequences of his behavior on the women," but as treatment progressed, he became more appreciative and became "motivated for treatment and began reading about professional sexual misconduct." He received treatment focusing on disrupting the "factors antecedent to his inappropriate behavior." He agreed to the imposition of "checks and balances . . . to ensure the absence of professional sexual misconduct," including the use of staff surveillance techniques, patient satisfaction surveys, and regular polygraph examinations of the defendant. BMI referred the defendant to CAC for follow-up treatment.

In reviewing the factors relevant to determining the manner of service of the defendant's six-month sentence, the trial judge first mentioned the two prior felony convictions and the misdemeanor convictions. The judge acknowledged that the drug-related offenses appear to have emanated from a drug problem that has been essentially resolved; however, all in all, the court found a prior history of criminal conduct.

On the other hand, the court found that the defendant had demonstrated some "very good conduct as a young man." He maintained an impressive grade point average in college and medical school and served honorably in the military. The defendant had "attempted self-rehabilitation."

In short, the court found the biographical factors to be a "mixed bag," but it accorded "great weight" to the prior felony record. The court also gave "some weight to the Disciplinary Board's prior actions" in finding the defendant guilty of inappropriate professional conduct. The court considered the victim impact statements and expressed concern that the defendant's conduct had caused one of the victims to experience "utter humiliation" and another to feel "violated and degraded." The court found that the impact on at least two victims was substantial and that this fact was relevant to the nature and circumstances of the offenses involving those victims. The court concluded that the "negative" factors outweighed the factors favoring any form of alternative sentence and ordered the defendant to serve his effective sentence in confinement.

On appeal, the defendant points to his "successful" voluntary psychological counseling, his age and health problems, his prior military service, and the remoteness of his prior criminal convictions as bases for "granting probation." The state maintains that the trial court had more than adequate bases for its order of confinement, especially the prior criminal record and the recurrent nature of the defendant's professional sexual misconduct.

Tennessee Code Annotated section 40-35-302 provides in part that the trial court shall impose a specific misdemeanor sentence consistent with the purposes and principles of the 1989 Criminal Sentencing Reform Act. Tenn. Code Ann. § 40-35-302(b) (1997). In misdemeanor sentencing, a separate sentencing hearing is not mandatory, but the court is required to provide the defendant with a reasonable opportunity to be heard as to the length and manner of service of the sentence. Tenn. Code Ann. § 40-35-302(a) (1997). Misdemeanor sentencing is designed to provide the trial court with a great deal of flexibility. *State v. Troutman*, 979 S.W.2d 271, 273 (Tenn. 1998). One convicted of a misdemeanor, unlike one convicted of a felony, is not entitled to a presumption of a minimum sentence. *State v. Creasy*, 885 S.W.2d 829, 832 (Tenn. Crim. App. 1994). This court has also held that the statutory presumption of favorable candidacy for alternative sentencing does not apply to a defendant who has been convicted of a misdemeanor. *State v. Williams*, 914 S.W.2d 940, 949 (Tenn. Crim. App. 1995); *see Troutman*, 979 S.W.2d at 273 (citing *Williams* with approval). *But see State v. Combs*, 945 S.W.2d 770, 774 (Tenn. Crim. App. 1996); *State v. Boyd*, 925 S.W.2d 237, 245 (Tenn. Crim. App. 1995); *State v. Gennoe*, 851 S.W.2d 833, 837 (Tenn. Crim. App. 1992). Our law does not require that a trial judge make specific findings of fact in misdemeanor sentencing when determining what portion of a sentence the defendant will serve in confinement. *State v. Troutman*, 979 S.W.2d 271, 274 (Tenn. 1998). The trial court is empowered

to place the misdemeanant on probation immediately or after a period of confinement. Tenn. Code Ann. § 40-35-302(e) (1997). The burden for showing that the court should probate the sentence rests with the defendant. Tenn. Code Ann. § 40-35-303(b) (1997).

The defendant, as the appellant in this court, has the burden of establishing that the sentence was erroneous. Tenn. Code Ann. § 40-35-401, Sentencing Comm'n Cmts. (1997); *Williams*, 914 S.W.2d at 949.

We conclude that the defendant has failed to carry the burden of establishing that the trial court erred in imposing a sentence of confinement. The trial court considered relevant factors in determining whether a sentencing alternative to confinement should have been utilized, including the defendant's prior criminal record, his potential for rehabilitation, his background and social history, and his present physical and mental condition, and whether probation is in the best interests of the defendant and the public. *See, e.g., State v. Hooper*, 29 S.W.3d 1 (Tenn. 2000). The record fully supports the court's factual findings, as well as its conclusions resulting from those findings.

We find no basis for disturbing the lower court's decision, and accordingly, we affirm the denial of alternative sentencing.[1]

_____
JAMES CURWOOD WITT, JR., JUDGE

---

[1] In passing, and in an effort to forestall what may have resulted in further litigation in this case, we note that the conviction judgments do not express a percentage of the effective sentence to be served "in actual confinement" before the defendant becomes eligible for "work release, furlough, trusty status and related rehabilitative programs." *See* Tenn. Code Ann. § 40-35-302(d) (1997). The statute contains a default provision that applies in this situation: "If no percentage is expressed in the judgment, the percentage shall be considered zero percent (0%)." *Id*. However, despite the absence of a percentage expressed in the judgment, "[w]hen this court has been faced with a transcript of the sentencing hearing clearly indicating the trial court's intention that the defendant's percentage is *not zero* percent, . . . we have deferred to the trial court's express pronouncement as reflected in the transcript." *State v. Russell*, 10 S.W.3d 270, 279 (Tenn. Crim. App. 1999) (emphasis in original). In the present case, perhaps the trial judge intended the default provision to apply or otherwise intended the percentage to be zero. Nevertheless, we have reviewed the trial judge's findings and comments in the transcript of the sentencing hearing. We discern no clear indication that he intended anything other than a zero percentage. Accordingly, in our view, the statutory default controls, and the applicable percentage of service is zero.