# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE
### Assigned on Briefs March 7, 2005

## STATE OF TENNESSEE v. WILLIAM VANBLARICUM

**Appeal from the Circuit Court for Franklin County**
**No. 14893     J. Curtis Smith, Judge**

---

**No. M2004-01530-CCA-R3-CD - Filed May 25, 2005**

---

The defendant, William Vanblaricum, was convicted by a Franklin County Circuit Court jury of driving under the influence of an intoxicant (DUI), a Class A misdemeanor. The trial court imposed a sentence of eleven months, twenty-nine days, with probation after thirty days in jail and one hundred hours of community service. The trial court also ordered the defendant to pay a fine of $350.00. On appeal, the defendant contends that the evidence is insufficient to support his conviction and that his sentence is excessive. We affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

JOSEPH M. TIPTON, J., delivered the opinion of the court, in which JOHN EVERETT WILLIAMS and NORMA MCGEE OGLE, JJ., joined.

Philip A. Condra, District Public Defender, and David Owen McGovern, Assistant Public Defender, for the appellant, William Vanblaricum.

Paul G. Summers, Attorney General and Reporter; Michelle Chapman McIntire, Assistant Attorney General; James Michael Taylor, District Attorney General; and William Bobo Copeland, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

This case relates to the defendant's arrest on a DUI charge after being stopped by a police officer because his car's taillights were not working. Cowan City Police Officer Matthew Baker testified that he observed the defendant driving without taillights while patrolling on July 29, 2002. He said that he turned on the patrol car's blue lights and that the defendant responded by driving across one lane and stopping on the left side of the road. He said that there was room to stop on the right side of the road and that most people stopped on the right side. He said that immediately after stopping, the defendant got out of his car and approached him and that he instructed the defendant to return to his car. He said that as he neared the defendant's car, he detected the odor of alcohol emanating from both the car and the defendant. He said he asked the defendant to perform field

sobriety tests, beginning with a heel-to-toe test. He said this test consists of taking nine steps in a straight line and then turning in three steps. He said standard police procedure is to demonstrate the test for the suspect and ask them not to begin until the officer has completed the demonstration. He said he asked the defendant to watch him, listen closely, and not start until he was instructed to do so. He said the defendant wanted to begin before he was finished with the demonstration, which usually indicated to him that the suspect is intoxicated. He said the defendant did not walk straight and did not walk heel-to-toe but took normal steps. He said that he instructed the defendant a second time and asked him if he understood but that the defendant was very off balance during the second attempt. He said he next explained and demonstrated the nose touch. He said the defendant swayed somewhat but performed this test fairly well. He said he then described the one-legged stand test, which is performed by extending one's right or left leg and holding it, six to eight inches above the ground with the toes pointed downward, for approximately thirty seconds. However, Officer Baker did not testify concerning the defendant's performance of this test.

Officer Baker testified that he asked the defendant to submit to a blood or breath test for alcohol when they arrived at the jail and that the defendant agreed. He said the test was never performed, however, because the defendant changed his mind. He said the stop of the defendant's car was recorded on videotape. The videotape was played for the jury.

On cross-examination, Officer Baker testified that the defendant took twenty-four seconds to stop his car after the blue lights were activated and that this is an unusually long period of time, the average being approximately ten seconds. He said the defendant admitted to having some beer in his car. He acknowledged that the defendant was cooperative and polite during the incident. He also acknowledged that the defendant informed him he had back problems when they began the field sobriety tests but that he did not inquire further concerning the defendant's physical condition.

Jarred Bradford testified that he worked for the Winchester Utility Company and as an auxiliary police officer for six years. He said that on July 29, 2002, he observed Officer Baker stop behind a car without taillights and that he pulled in behind the officer to assist him. He said that he was present during the field sobriety tests and that he believed the defendant was under the influence of an intoxicant. He said the defendant hesitated, fumbled, and made unclear gestures.

On cross-examination, Mr. Bradford acknowledged that he first observed Officer Baker with the defendant after they had stopped and that he did not have an opportunity to see the defendant driving. He said that he believed the defendant was under the influence based on the odor of alcohol he detected and the way the defendant was "toddling around." He said that Officer Baker had to repeat his questions several times before the defendant understood him, that the defendant's speech was slurred, and that the defendant used the patrol car as a prop while he was standing.

The defendant called Dr. Gursheel Dhillon who testified that the defendant had been his patient since July 18, 2002, and had suffered from heart disease, a history of back pain, and diabetes. He said the defendant initially came to see him because he needed a referral to a pain clinic for his back problems. He said the defendant takes various medications, including insulin, and may suffer

from adult attention deficit disorder. He said low blood sugar can cause dizziness, sweating, and loss of consciousness. He said that heart disease patients may experience dizzy spells and poor cognition and that stress can cause heart problems, but he believed looking at blue lights would not cause such problems.

On cross-examination, Dr. Dhillon testified that the defendant's back problem would not interfere with his ability to understand directions or walk a straight line but that it may affect his ability to stand on one foot. He said the defendant's raising one leg six to eight inches while standing could cause him to stumble or lose balance and fall over, given the condition of his back. He said the back problem was a disc bulge and could affect both legs. He said the defendant missed his appointments with him many times. He said the defendant's medications were not accompanied by warnings that they should not be taken with alcohol.

The defendant testified that he noticed the officer behind him turned on his blue lights and that two or three blocks later he decided to stop. He said he pulled over on the right side of the road. He admitted telling the officer that he drank a couple of beers three to four hours earlier. He also admitted he was off balance when he performed the one-legged stand test. He said the test caused severe pain in his back. Regarding the heel-to-toe test, the defendant claimed he could not walk the nine steps requested by the officer because he ran out of space. He said that he took his medication for diabetes two or three hours earlier that afternoon but that he"bombed out" afterward because he was not eating properly. He said he stopped at a Speedy Market store to buy ice cream and candy bars, ate them, and drove to Cowan. He said he was finishing the last candy bar and starting to "come back around some" when Officer Baker stopped him. He said that he was not under the influence of alcohol at the time the officer stopped him and that he leaned against the patrol car because he was instructed to do so while waiting for the officer. He said he agreed to take the breathalyzer test because he knew his back pain would prevent him from passing the field sobriety tests.

On cross-examination, the defendant admitted that he was under the influence of alcohol earlier that day, at 5:30 or 6:00 p.m., and that he refused to take the breathalyzer test when he arrived at the jail. He said he changed his mind because he was under arrest and wanted to talk to an attorney. He said that if he had passed the breath test, they would have taken him to a hospital to test his blood. On redirect examination, the defendant said his hearing was impaired: forty-five percent hearing loss in the right ear and twenty-five percent in the left ear.

## I. SUFFICIENCY OF THE EVIDENCE

The defendant contends that the evidence is insufficient to support his DUI conviction. The defendant argues that the facts do not show he was under the influence of alcohol at the time the officer stopped him and that the only evidence to support a contrary finding is the opinion of the two officers at the scene. He contends his poor performance on the field sobriety tests were the result of his medical condition, which was confirmed by his testimony and that of Dr. Dhillon. The state contends the evidence was sufficient to sustain his conviction. We agree with the state.

Our standard of review when the defendant questions the sufficiency of the evidence on appeal is "whether, after viewing the evidence in the light most favorable to the prosecution, <u>any</u> rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." <u>Jackson v. Virginia</u>, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979). We do not reweigh the evidence but presume that the jury has resolved all conflicts in the testimony and drawn all reasonable inferences from the evidence in favor of the state. <u>See</u> <u>State v. Sheffield</u>, 676 S.W.2d 542, 547 (Tenn. 1984); <u>State v. Cabbage</u>, 571 S.W.2d 832, 835 (Tenn. 1978). Questions about witness credibility were resolved by the jury. <u>See</u> <u>State v. Bland</u>, 958 S.W.2d 651, 659 (Tenn. 1997).

Tennessee Code Annotated section 55-10-401 states in pertinent part:

> (a) It is unlawful for any person to drive or to be in physical control of any automobile or other motor driven vehicle on any of the public roads and highways of the state, or on any streets or alleys, or while on the premises of any shopping center, trailer park or any apartment house complex, or any other premises which is generally frequented by the public at large, while:
>
> (1) Under the influence of any intoxicant, marijuana, narcotic drug, or drug producing stimulating effects on the central nervous system
> . . . .

In this case, we conclude that the evidence, taken in a light most favorable to the state, was sufficient for a rational jury to find beyond a reasonable doubt that the defendant was driving while under the influence of an intoxicant. Both officers testified that they detected an odor of alcohol on the defendant and that he appeared physically impaired. According to the officers, the defendant was unable to follow instructions, complete all the tests satisfactorily, or stand easily. Although Dr. Dhillon's testimony indicated that there may be medical explanations for all or some of the defendant's physical disabilities, he did not explain the defendant's odor of alcohol, slurred speech, inability to understand simple directions, or refusal to take a breath test. The evidence justified the jury's attributing the defendant's conduct to his being under the influence. The defendant is not entitled to relief on this issue.

## II. EXCESSIVE SENTENCE

The defendant contends that his sentence is excessive. He argues that the confinement imposed is fifteen times the minimum sentence of confinement for a first DUI conviction and that the trial court erred by failing to adhere to the analysis required by T.C.A. § 40-35-302(d). The state contends that the trial court properly sentenced the defendant. We agree with the state.

At the sentencing hearing, the defendant exercised his right to make an unsworn statement of allocution pursuant to T.C.A. § 40-35-210(b)(6) and claimed numerous unlawful acts of harassment and abuse of authority by various law enforcement officers beginning in 2001. He said

officers had stopped him and arrested him on false charges, stolen his guns, confiscated his car, and conducted illegal searches of his house.

Laura Prosser, employed by the Probation and Parole Department, testified that she prepared the defendant's presentence report and that the defendant's probation for a 1989 felony conviction for obtaining drugs by fraud in Texas was supervised in Tennessee. The presentence report also reflected that the defendant had prior DUI convictions in 1987 and 1988 in Tennessee. Based only upon the defendant's two prior DUI convictions, the trial court sentenced the defendant to eleven months, twenty-nine days, with probation after thirty days in jail, ordered him to perform one hundred hours of public service work, and fined him $350.00.

Appellate review of sentencing is de novo on the record with a presumption that the trial court's determinations are correct. T.C.A. § 40-35-401(d). As the Sentencing Commission Comments to this section note, the burden is now on the appealing party to show that the sentencing is improper. This means that if the trial court followed the statutory sentencing procedure, made findings of fact that are adequately supported in the record, and gave due consideration and proper weight to the factors and principles that are relevant to sentencing under the 1989 Sentencing Act, we may not disturb the sentence even if a different result were preferred. State v. Fletcher, 805 S.W.2d 785, 789 (Tenn. Crim. App. 1991).

Also, in conducting a de novo review, we must consider (1) the evidence, if any, received at the trial and sentencing hearing, (2) the presentence report, (3) the principles of sentencing and arguments as to sentencing alternatives, (4) the nature and characteristics of the criminal conduct, (5) any mitigating or statutory enhancement factors, (6) any statement that the defendant made on his own behalf, and (7) the potential for rehabilitation or treatment. T.C.A. §§ 40-35-102, -103, -210; see State v. Ashby, 823 S.W.2d 166, 168 (Tenn. 1991); State v. Moss, 727 S.W.2d 229, 236-37 (Tenn. 1986).

A defendant convicted of a misdemeanor is not entitled to the presumption of a minimum sentence. State v. Creasy, 885 S.W.2d 829, 832 (Tenn. Crim. App. 1994). Moreover, misdemeanor sentences do not contain ranges of punishments, and a misdemeanor defendant may be sentenced to the maximum term provided for the offense as long as the sentence imposed is consistent with the purposes of the sentencing act. State v. Palmer, 902 S.W.2d 391, 393 (Tenn. 1995). Our statutory system concerning misdemeanor sentencing is designed to provide trial courts with continuing jurisdiction and a great deal of flexibility. See T.C.A. § 40-35-302(d), Sentencing Commission Comments; State v. Boyd, 925 S.W.2d 237, 244 (Tenn. Crim. App. 1995).

With regard to DUI offenses, T.C.A. § 55-10-403(a)(1) sets mandatory minimum periods for confinement depending on whether the offense is a first or subsequent offense, and subsection (m) provides, "Nothing in . . . the Sentencing Reform Act of 1989[] shall be construed as altering, amending or decreasing the penalties established in this section for the offense of driving under the influence of an intoxicant." In addressing whether DUI offenders must be sentenced in accordance with the sentencing act, our supreme court noted that

the legislature has specifically excluded DUI offenders from the provisions of the Act when the application of the Act would serve to either alter, amend, or decrease the specific penalties provided for DUI offenders. A trial judge may designate a service percentage in a DUI case under Tennessee Code Annotated Section 40-35-302(d) but that percentage may not operate to reduce the mandatory minimum sentencing provisions of the DUI statute.

Palmer, 902 S.W.2d at 394. A DUI offender can be sentenced to serve the maximum punishment for the offense so long as the imposition of that sentence is in accordance with the principles and purposes of the Criminal Sentencing Reform Act of 1989. Id.

The defendant contends that the trial court erred by failing to adhere to the misdemeanor sentencing guidelines in T.C.A. § 40-35-302(d), which provides in pertinent part:

In imposing a misdemeanor sentence, the court shall fix a percentage of the sentence which the defendant shall serve [in confinement] . . . . In determining the percentage of the sentence to be served in actual confinement, the court shall consider the purposes of this chapter, the principles of sentencing, and the enhancement and mitigating factors set forth in this chapter and shall not impose such percentages arbitrarily.

However, the record does not reflect that the trial court failed to consider the sentencing considerations and guidelines set forth in T.C.A. §§ 40-35-102, -103, or -302(d) or that it failed to consider the enhancement and mitigating factors when calculating the percentage of the defendant's sentence to be served in confinement. The record also fails to reflect that the trial court imposed the confinement arbitrarily. Rather, it reflects that the trial court considered the sentencing purposes and principles in addition to the presentence report and the evidence presented when it imposed the sentence in this case. According to T.C.A. § 55-10-403(a)(1), the punishment for any person violating § 55-10-401 shall be a fine of not less than $350.00 and confinement for not less than forty-eight hours. The defendant contends that he should have received the minimum sentence of forty-eight hours confinement, but the trial court determined otherwise based upon his two prior DUI convictions. The defendant also contends that the trial court failed to consider the testimony of the officers at the trial and that his sentence is in retaliation for exercising his right to trial. The record contains no evidence to support these contentions. Because we conclude that the trial court's imposition of the defendant's sentence is in accordance with the principles and purposes of the Criminal Sentencing Reform Act of 1989 and complies with the mandate in T.C.A. § 55-10-403(m), the defendant is not entitled to relief on this issue.

Based on the foregoing and the record as a whole, we affirm the judgment of the trial court.


_____
JOSEPH M. TIPTON, JUDGE