IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs March 2, 2010

## STATE OF TENNESSEE v. MICHAEL MARTEZ RHODES

**Direct Appeal from the Criminal Court for Davidson County**
**No. 2007-B-1384      Cheryl Blackburn, Judge**

_____

**No. M2009-00077-CCA-R3-CD - Filed December 8, 2010**

_____

The defendant, Michael Martez Rhodes, pursuant to a plea agreement, entered an *Alford* "best interest" plea of guilty to two counts of attempted aggravated sexual battery, a Class C felony. The agreement provided for a four-year sentence for each conviction, with the manner of service to be determined by the trial court. Following a sentencing hearing, the trial court imposed consecutive sentences for a total effective sentence of eight years, to be served in the Department of Correction. On appeal, the defendant argues that the trial court erred in denying probation and in imposing consecutive sentences. After careful review, we affirm the judgments from the trial court. However, we note the transcript shows an *Alford* "best-interest" guilty plea. The judgment reflects a plea of *nolo contendere*. We remand for a correction of the judgment.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Criminal Court Affirmed and Remanded**

JOHN EVERETT WILLIAMS, J., delivered the opinion of the Court, in which JOSEPH M. TIPTON, P.J., and ALAN E. GLENN, J., joined.

J. David Wicker, Nashville, Tennessee, for the appellant, Michael Martez Rhodes.

Robert E. Cooper, Jr., Attorney General and Reporter; David H. Findley, Senior Counsel; Victor S. (Torry) Johnson, III, District Attorney General; and Katrin Miller, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

Had the State proceeded to trial, it would have presented the following facts. On April 5, 2006, the eleven-year-old victim disclosed to her mother that her stepfather, the defendant, had grabbed her breasts. The victim's mother, who was the defendant's wife,

immediately reported this to the Department of Children's Services and the Metro Police Department. A controlled telephone call between the victim's mother and the defendant was arranged by the detective assigned to investigate this case. During the telephone call, the defendant admitted that he had pinched the victim's breasts and had touched the outside of the victim's vagina. He claimed the touches were not sexual in nature but, rather, were playful and were intended to show her where she needed to shave and that she needed to start wearing a bra.

In another recorded telephone conversation between the victim's mother and the defendant, he made the same admissions and urged her not to reveal the information. He asked her to speak to the victim and instruct her not to tell anyone that he had touched her vagina. However, the defendant told the victim's mother that the victim could tell that he had touched her breasts.

The detective's testimony would have been that he recorded an interview with the defendant in which the defendant acknowledged that he pinched the victim's nipples but denied that the touching was sexual in nature. During the plea hearing, the defendant acknowledged the accuracy of the facts recited by the State. The defendant entered a *nolo contendere* plea to two counts of attempted aggravated sexual battery in exchange for two four-year sentences, with the manner of service to be determined by the trial court.

During the sentencing hearing, the victim testified that she was eleven years old when the defendant, her ex-stepfather, touched her vaginal area. She said that she would like to see the defendant go to jail. The victim testified that she told her mother and her best friend what had happened and, further, said that the incidents "ruined [her] life." She said that she told her friend because she thought her friend would not tell anyone; however, people at school learned about the incidents, pointed at her, and talked about how she was molested. She testified that she had been in counseling since the defendant touched her.

During cross-examination, the victim acknowledged that she also made similar allegations against another man and that she had been in counseling prior to making the underlying allegations. She did not recall how long she had been in counseling before she made these allegations. She testified that there were three people living in their home in addition to herself: the defendant, his son, and her mother.

The victim testified that the defendant walked around the home in his boxers. She testified that they all shared the same bathroom and that the defendant would enter the bathroom while she was showering. He told her that he did this when the victim's stepbrother needed to use the bathroom to ensure that the stepbrother was not looking at her because they used a transparent shower curtain. The victim thought it was inappropriate for

the defendant to enter the bathroom while she was showering.

The victim testified that on both occasions when the defendant pinched her breasts, he told her that she needed to talk to her mother about wearing a bra. The victim testified that the defendant was wearing boxers when he touched her breasts. She testified that he touched her vaginal area while she was in the shower. The defendant told her she needed to start shaving "down there because [she] was starting to get a lot of hair right there." She testified that she wanted to shave and had discussed it with her mother but had not discussed it with the defendant.

The victim testified that a neighbor had also entered a guilty plea to touching her. The neighbor touched her repeatedly when he assaulted her. She said that was different from the touching in the instant case. The victim reiterated that she was shaving her legs in the shower when the defendant entered. The defendant opened the shower curtain when he walked into the bathroom. He told the victim to bend over and said she needed to start shaving her vaginal area. She said that she was blow drying and brushing her hair in the bathroom when the defendant entered and touched her breast. She said that the defendant would enter the bathroom "out of the blue" to wash his hands or use the restroom while she was taking a shower. She said that whenever she was in the shower, "he always seemed to kind of come in there . . . he always did that when [I] was in the shower." She said that the defendant said he entered the bathroom because his son needed to use the bathroom and the defendant was shielding him from seeing the victim.

The victim was not sure how much time passed between the touches but thought it was probably a couple of months. She complained to her mother about the touches after the third incident. The victim testified that she did not complain to the defendant about the touches because he was the disciplinarian in the home and was not very nice to her. She said that he had previously spanked her with a belt, causing bruises on her legs.

The defendant testified that he was employed and was living in Kentucky with his mother. In May 2006, when the underlying events occurred, he was a manager at Christie's Cabaret, which he characterized as "a strip club," and the victim's mother worked at a different "strip club." He said that it was common for him to walk around the home wearing only his boxers. He said the victim always wore a shirt, but her mother would sometimes walk around in boxers and a tank top with "no kind of support." He said that the entire family used the same restroom and that, until he was charged with the crimes, he did not see it as a problem to enter the restroom while it was occupied. He testified that he now understood that what they were doing was wrong and maintained that it was not done for sexual gratification.

The defendant acknowledged that he touched the victim on her breast and told her she needed to wear a bra. He said that the victim's mother had several conversations with him about the victim's need to shave her vaginal area. He testified that he told the victim's mother that the victim could hurt herself if the mother did not show her what to do. He acknowledged that he was the disciplinarian of the household, and he agreed that it was inappropriate for him to touch the victim.

He testified that he entered a best interest plea because he was facing eight to twelve years in prison and hoped to be placed on probation. The defendant underwent a psychosexual evaluation, which concluded that he denied, defended, or repressed the truth of the events that occurred. The psychologist also made a finding that the defendant might have some sexual deviance or disorder resulting from his attitude toward women. The defendant said he was willing to get treatment, if necessary. He attributed some of his problems to his prior employment in the adult entertainment industry but testified that he had left that field of work. The psychosexual evaluation classified his risk for sexual recidivism as low but noted that he had some enhancing factors present in the low category, including a need to control his anger and negative emotions. He acknowledged that there had been two incidents involving his temper in his current job but stated that neither incident resulted in physical violence. He also said that he was working on his anger issues with the victim's mother and that he had no desire to talk to her about any issue other than his son. The psychosexual report also indicated that it was unclear if the defendant had a sexual interest in young girls or a disorder related to his attitudes toward females.

During cross-examination, the defendant acknowledged that he did not tell the detective that he touched the victim to educate her on how to shave. He said that he was afraid to talk to the police and also acknowledged that he instructed the victim's mother not to tell anyone that he had touched the victim. He agreed that in the psychosexual report, he said that the victim's breasts were "barely formed" even though he testified that "she walked around with tank tops and they would pop out." The defendant testified that on two prior occasions, he had been placed on probation. He was also convicted of possession of a controlled substance while in possession of a firearm. He testified that, even though he did not have a carry permit, he carried a firearm on occasion when he worked at the "strip clubs." He also testified that it had been sixteen months since he last used drugs.

The victim's mother testified that she discussed shaving with the victim and told her not to shave anything between her legs. She acknowledged that she told the defendant she was not comfortable talking to the victim about shaving but stated she did not ask him to talk to the victim about it. She told her daughter not to shave there because she did not want her to get cut and because it was inappropriate to discuss such things with an eleven-year-old.

The trial court sentenced the defendant to two consecutive four-year sentences and ordered the sentences to be served in confinement. This appeal followed.

Analysis

On appeal, the defendant argues that the trial court erred in ordering his sentences to run consecutively and in denying him full probation. First, we will consider the issue of consecutive sentencing. A court may order sentences to run consecutively if the court finds by a preponderance of the evidence that:

> (5) [t]he defendant is convicted of two (2) or more statutory offenses involving sexual abuse of a minor with consideration of the aggravating circumstances arising from the relationship between the defendant and victim or victims, the time span of [the] defendant's undetected sexual activity, the nature and scope of the sexual acts and the extent of the residual, physical and mental damage to the victim or victims;

T.C.A. § 40-35-115(b)(5) (2006); *see also State v. Imfeld*, 70 S.W.3d 698, 708 (Tenn. 2002). In imposing consecutive sentences, the trial court found that: the defendant was convicted of two or more sexual offenses against a minor; the offenses occurred several months apart before the crimes were detected; and the defendant caused emotional distress to the victim because he was the undisputed chief disciplinarian in the household.

Here, although the victim testified that she had been undergoing counseling for an unrelated incident, she stated that the assaults by the defendant caused her to seek additional counseling and to suffer unwanted attention at school from her peers, making it necessary for her to change schools. The victim characterized these crimes as "ruining her life." The defendant regularly entered the bathroom while the victim was vulnerable because she was naked and showering. The record supports the trial court's finding that there were circumstances present to impose consecutive sentences. We also note this court's decision in *State v. Brandon Raymond Bartee*, No. M2004-02637-CCA-R3-CD, 2005 Tenn. Crim. App. LEXIS 1045, at **11-12 (Tenn. Crim. App. at Nashville, Sept. 20, 2005), where the defendant entered guilty pleas to three counts of sexual battery as lesser included offenses of the indicted offenses of aggravated sexual battery. The defendant in *Bartee* was a registered sex offender who deceived his neighbors into allowing him to play with their children. While wrestling with the children, he touched a six-year-old victim's breasts, buttocks, and genitalia. The defendant in *Bartee* contended that the trial court should not have imposed consecutive sentences, but this court concluded that the predatory nature of the defendant's actions, together with the psychological effects incurred by the victim, were sufficient to warrant consecutive sentences. Here, on multiple occasions, the defendant, who

was an authority figure in the victim's life, entered the bathroom while the victim was showering and touched her bare breasts. He also touched her on the outside of her vagina while she was undressed in the bathroom. Though this defendant was not a registered sex offender, he exhibited predatory behavior by touching the victim when she was at her most vulnerable. Therefore, we conclude that the nature of the defendant's actions, combined with the parties' relationship as parent and child and the victim's other issues, warrant an imposition of consecutive sentences.

Next, the defendant argues that he should have been sentenced to probation. When a defendant challenges the manner of the service of a sentence, this court conducts a *de novo* review of the record with a presumption that the determinations made by the sentencing court are correct. T.C.A. § 40-35-401(d) (2006). If our review reflects that the trial court followed the statutory sentencing procedure, that it imposed a lawful sentence after duly considering and weighing the factors and principles set out under the sentencing law, and that its findings are adequately supported by the record, then we may not disturb the sentence even if we would have preferred a different result. *State v. Hooper*, 29 S.W.3d 1, 5 (Tenn. 2000). However, if the trial court failed to comply with the statutory guidelines, we must review the sentence *de novo* without a presumption of correctness. *State v. Poole*, 945 S.W.2d 93, 96 (Tenn. 1997). The defendant bears the burden of proving the sentence is improper. T.C.A. § 40-35-401, Sentencing Comm'n Comments.

A trial court must impose a sentence within the applicable range of punishment, determined by whether the defendant is a mitigated, standard, persistent, career, or repeat violent offender. T.C.A. § 40-35-210(c) (2006). In conducting our review, we are required, pursuant to Tennessee Code Annotated section 40-35-210(b), to consider the following factors in sentencing:

> (1) [t]he evidence, if any, received at the trial and the sentencing hearing; (2) [t]he presentence report; (3) [t]he principles of sentencing and arguments as to sentencing alternatives; (4) [t]he nature and characteristics of the criminal conduct involved; (5) [e]vidence and information offered by the parties on the enhancement and mitigating factors in [sections] 40-35-113 and 40-35-114; and (6) [a]ny statement the defendant wishes to make in the defendant's own behalf about sentencing.

The trial court's weighing of various mitigating and enhancement factors is left to its sound discretion, as the factors are merely advisory. *State v. Carter*, 254 S.W.3d 335, 345 (Tenn. 2008). Our Sentencing Act provides that a defendant who does not possess a criminal history showing a clear disregard for society's laws and morals, who has not failed past rehabilitation efforts, and who "is an especially mitigated or standard offender convicted of a Class C, D,

or E felony, should be considered as a favorable candidate for alternative sentencing options in the absence of evidence to the contrary." T.C.A. § 40-35-102(6) (2006); *see also State v. Fields*, 40 S.W.3d 435, 440 (Tenn. 2001).

Even though probation must be automatically considered, "the defendant is not automatically entitled to probation as a matter of law." T.C.A. § 40-35-303(b) (2006), Sentencing Comm'n Comments; *State v. Hartley*, 818 S.W.2d 370, 373 (Tenn. Crim. App. 1991). On appeal, a defendant seeking full probation bears the burden of showing that the imposed sentence is improper and that full probation will be in the best interest of the defendant and the public. *State v. Baker*, 966 S.W.2d 429, 434 (Tenn. Crim. App. 1997).

In determining whether to grant or deny probation, a trial court should consider the circumstances of the offense, the defendant's criminal record, the defendant's social history and present condition, the need for deterrence, and the best interest of the defendant and the public. *State v. Grear*, 568 S.W.2d 285, 286 (Tenn. 1978); *State v. Boyd*, 925 S.W.2d 237, 244 (Tenn. Crim. App. 1995). The defendant's lack of credibility is also an appropriate consideration and reflects on a defendant's potential for rehabilitation. *State v. Nunley*, 22 S.W.3d 282, 289 (Tenn. Crim. App. 1999). Under Tennessee's revised Sentencing Act, the provision that certain defendants should be considered favorable candidates for alternative sentencing is an "advisory sentencing guideline" that the trial court "shall consider, but is not bound by. . . ." T.C.A. § 40-35-102(6)(D). The Tennessee Supreme Court has held that it is proper for a trial court to look beyond a plea bargain and consider the "true nature of the offenses committed." *State v. Hollingsworth*, 647 S.W.2d 937, 939 (Tenn. 1983).

Here, the trial court did not find credible the defendant's explanation that he did not understand that his actions were wrong. The court did not accept the defendant's argument that he was trying to instruct the victim that she needed to begin shaving and wear a bra. Instead, the trial court concluded that the defendant engaged in the touching for sexual gratification because it was not necessary for the defendant to enter the bathroom on multiple occasions while the victim was showering to deliver those instructions. Further, the victim testified that the defendant was aroused when he touched her breasts.

The trial court also found that the defendant abused a position of trust because it was testified to that he was the disciplinarian in the household. Additionally, the defendant had two 1997 convictions in Tennessee for possession of drugs and for a weapons offense. He received probation for these convictions. The trial court also noted that the defendant had tried to mislead the police about these crimes.

The defendant argues that the trial court erred in finding Tennessee Code Annotated section 40-35-103(1)(c) applicable because he successfully completed his probation for the

1997 convictions. This argument supports a position that as long as a defendant completes a sentence of probation without incident that, upon his return to society, he can continue to commit crimes and remain eligible for probation. This argument should fail because the defendant's behavior indicates a disregard for the law and reflects that his prior period of probation did not serve to rehabilitate him from committing future violations of the law.

As previously stated, the trial court is free to look behind the plea agreement and consider the true nature of the crimes. Here, the defendant was indicted for aggravated sexual battery after he touched the eleven-year-old victim on her breasts on two separate occasions and on her vagina on one occasion. The statute governing eligibility for probation specifically excludes those convicted of aggravated sexual battery. T.C.A. § 40-35-303(a). The defendant asserts that the trial court made no finding as to his prospects for rehabilitation. The trial court stated that it did not find the defendant credible in his explanation of his motives for committing the crimes. The trial court found that the defendant's lack of candor would have an effect on his ability to successfully complete probation. As previously stated, a defendant's credibility is an appropriate consideration and reflects on a defendant's potential for rehabilitation. *Nunley*, 22 S.W.3d at 289. In light of the above, the trial court properly denied probation.

We also note the transcript and the judgment contain a differing description of the type of plea entered by the defendant. The transcript presents a "best interest" guilty plea, pursuant to *North Carolina v. Alford,* 400 U.S. 25, 37 (1970), and the judgment refers to the guilty plea as *nolo contendere*. We remand only this issue to the trial court for correction of judgment.

Conclusion

Based on the foregoing and the record as a whole, we affirm the judgments from the trial court and remand to the trial court for correction of the judgment.

_____
JOHN EVERETT WILLIAMS, JUDGE