# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT KNOXVILLE
Assigned on Briefs on April 26, 2011

## STATE OF TENNESSEE v.
## KEELE CAMILLE MAYNOR a/k/a KEELE CAMILLE PAYNE

**Direct Appeal from the Criminal Court for Hamilton County**
**No. 270962      Don W. Poole, Judge**

---

**No. E2010-01816-CCA-R3-CD - Filed November 21, 2011**

---

Pursuant to a negotiated plea agreement, Defendant, Keele Camille Maynor (a/k/a Payne), pled guilty to nine charges and was sentenced as follows: in Count 1, Defendant pled guilty to Class C felony theft and was sentenced to serve 42 months in the Tennessee Department of Correction (TDOC); in Count 2, Defendant pled guilty to Class C felony theft and was sentenced to five years in TDOC, suspended with probation for ten years; in Count 3, Defendant pled guilty to Class D felony theft and was sentenced to three years in TDOC, suspended with probation for six years; in Count 4, Defendant pled guilty to Class D felony theft (although the judgment, in error, reflects a conviction for Class E felony theft) and was sentenced to three years in TDOC, suspended with probation for six years; in Count 5, Defendant pled guilty to Class E felony theft and was sentenced to two years in TDOC, suspended with probation for four years; in Count 6, Defendant pled guilty to Class D felony theft and was sentenced to three years in TDOC, suspended with probation for six years; in Count 7, Defendant pled guilty to Class E felony theft and was sentenced to two years in TDOC, suspended with probation for five years; in Count 8, Defendant pled guilty to Class E felony theft and was sentenced to two years in TDOC, suspended with probation for five years; and in Count 9, Defendant pled guilty to Class E felony forgery and was sentenced to serve two years in TDOC. Pursuant to the plea agreement, Defendant was to receive concurrent Range I sentences, but the trial court, following a sentencing hearing, determined the length, range, and manner of Defendant's sentences. The trial court also imposed an agreed upon amount of restitution. On appeal, Defendant challenges the trial court's imposition of a 42-month sentence of incarceration in Count 1 and asserts that the sentence structure imposed by the trial court results in consecutive, rather than concurrent, sentences. We affirm the convictions and sentences imposed in all counts, except for Count 4, which we remand for entry of a corrected judgment.

**Tenn. R. App. P. 3 Appeal as of Right;**
**Judgments of the Criminal Court Affirmed in Part, Remanded in Part**

THOMAS T. WOODALL, J., delivered the opinion of the Court, in which JOHN EVERETT WILLIAMS, J., joined. DAVID H. WELLES, SP.J., not participating.

Ardena J. Garth, District Public Defender; and Richard Kenneth Mabee, Assistant District Public Defender, Chattanooga, Tennessee, for the appellant, Keele Camille Maynor.

Robert E. Cooper, Jr., Attorney General and Reporter; Matthew Bryant Haskell, Assistant Attorney General; William H. Cox, III, District Attorney General; and Neal Pinkston, Assistant District Attorney General, for the appellee, the State of Tennessee.

**OPINION**

*Sentencing Hearing*

Sergeant Toby Hewitt, of the Chattanooga Police Department, testified that he began investigating allegations of fraud by Defendant in December, 2008. At that time, Defendant was employed with the Regional Planning Agency of the City of Chattanooga. Defendant had claimed that she had cancer and as a result she received financial assistance for medical treatment from the city and city employees. Other organizations also offered Defendant support, including over $8,100 in funds for rent and utilities from the Helen Distefano Fund; free counseling, massage therapy, and a weekend retreat from the Memorial Hospital Cancer Support; monetary assistance for car payments from an individual named Kathy Jones; $250 worth of grocery gift cards from the New Salem Baptist Church; and $966 worth of Christmas gifts from the Red Bank High School Quarterback Club. Defendant maintained a blog by which she updated others as to her cancer treatment.

Stan Sewell, the director of the Internal Audit Division of the City of Chattanooga, testified that Defendant received leave time, for which she was compensated, which was donated by other city employees.

Sandy Hughes testified that she worked with Defendant. She believed that she and Defendant shared a bond because Ms. Hughes was a cancer survivor. Ms. Hughes offered to take Defendant to her chemotherapy treatments, but Defendant refused. Ms. Hughes "put the word out" about Defendant's needs and helped organize a "Black and Pink Affair" to auction donated items. At the event, over $4,000 was raised. Ms. Hughes also testified that Defendant told her that her children were in counseling and that Defendant's daughter sometimes stayed home from school because she was afraid that Defendant would die while she was at school.

Kelly Dempsy, of the Department of Human Services investigations division, testified that Defendant pled guilty to food stamp and welfare fraud in 2000 and was ordered to pay restitution. The Department intercepted Defendant's tax refund and obtained a civil judgment and garnished her wages; however, a probation violation warrant was not filed for Defendant's failure to pay restitution.

James Rox, of the Tennessee Board of Probation and Parole, prepared the presentence report. Mr. Rox testified that Defendant's medical records were contrary to Defendant's public and private statements about her having cancer. In fact, he testified that Defendant told him that she had cancer in 2000 and was in remission and that she had lied about her cancer having returned. Defendant had a history of criminal convictions, including disorderly conduct, AFDC fraud, and food stamp fraud. Mr. Rox testified that, should Defendant be placed on probation by the trial court, he recommended low-level supervision, as well as a mental health evaluation.

Several witnesses testified on behalf of Defendant. Richard Coleman testified that he was Defendant's pastor and spiritual counselor. He testified that Defendant was honest and attentive and that she was taking responsibility for her actions. Angie Wynn testified that she had known Defendant since January, 2009. Defendant was referred to Ms. Wynn for counseling by Love Your Neighbor Ministries. She testified that Defendant was remorseful, honest, and repentant about her actions. Tim Dempsey, of Chattanooga Endeavors, testified that Defendant was referred to him for a "work readiness" program. Defendant had successfully completed the program and found employment at M&M Industries. Mr. Dempsey described Defendant as dependable, reliable, and responsible. Sherry Blevins was a manager at M&M Industries, where Defendant had been employed for ten months at the time of the hearing. Ms. Blevins testified that Defendant was a dependable and loyal employee. Mimi Neighbors attended Bible study classes with Defendant at CCA Silverdale Correctional Facility in February, 2009. After Defendant's release, Ms. Neighbors and Defendant maintained a "mentoring relationship." She also described Defendant as responsible.

Yvonne Kennemore, Defendant's aunt, also testified that Defendant was remorseful and that Defendant had experienced financial hardship, and she believed Defendant had committed the crimes in order to provide for her children. Cecil Barber, Defendant's father, testified that he supported his daughter even though she lied about having cancer. Mr. Barber testified that Defendant had shown remorse for her conduct.

Defendant testified that she lied about having cancer and that she had never had cancer. She testified that her parents divorced when she was 12 or 13 years old. She was sexually abused at the age of 15. Her mother used drugs and alcohol. Defendant became

pregnant while she was still in high school and later married her son's father, who was abusive. They had another child together and later divorced. She moved to Chattanooga and later had a daughter. Defendant testified that she struggled financially. She testified that she felt "very down" and "unloved" and told others that she had cancer in order to feel supported. Defendant testified that she knew taking financial assistance from others was wrong. She testified that she used the money raised at the "Black and Pink" event, which was approximately $4,000, to buy Christmas gifts for her children. Defendant expressed her remorse and testified that she was able to pay restitution if ordered by the court. Defendant testified that she was relieved when it was discovered that she had lied about having cancer, but she admitted that, even after her lie was discovered, she lied again to Mr. Rox.

*Analysis*

Defendant asserts that the trial court erred by imposing a sentence of incarceration as to her 42-month sentence for her Class C felony theft conviction in Count 1. We note that incarceration was also ordered for the two-year sentence in Count 9. Even though Defendant does not specifically mention the sentence in Count 9 in her brief, our decision and analysis as to Count 1 equally applies to Count 9.

On appeal, the party challenging the sentence imposed by the trial court has the burden of establishing that the sentence is erroneous. *See* Tenn. Code Ann. § 40-35-401, Sentencing Comm'n Comments; *see also State v. Arnett*, 49 S.W.3d 250, 257 (Tenn. 2001). When a defendant challenges the length, range, or manner of service of a sentence, it is the duty of this Court to conduct a de novo review on the record with a presumption that the determinations made by the court from which the appeal is taken are correct. Tenn. Code Ann. § 40-35-401(d). However, this presumption is "conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances." *State v. Pettus*, 986 S.W.2d 540, 543-44 (Tenn. 1999); *see also State v. Carter*, 254 S.W.3d 335, 344-45 (Tenn. 2008). If our review reflects that the trial court failed to consider the sentencing principles and all relevant facts and circumstances, then review of the challenged sentence is purely de novo without the presumption of correctness. *State v. Ashby*, 823 S.W.2d 166, 169 (Tenn. 1991); *see also Carter*, 254 S.W.3d at 344-45.

Generally, as to offenses which occur after June 7, 2005, in conducting a de novo review of a sentence, this Court must consider (a) the evidence adduced at the trial and the sentencing hearing; (b) the presentence report; (c) the principles of sentencing and arguments as to sentencing alternatives; (d) the nature and characteristics of the criminal conduct involved; (e) evidence and information offered by the parties on the enhancement and mitigating factors set forth in Tennessee Code Annotated sections 40-35-113 and 40-35-114;

(f) any statistical information provided by the Administrative Office of the Courts as to Tennessee sentencing practices for similar offenses; and (g) any statement the defendant wishes to make in the defendant's own behalf about sentencing.  Tenn. Code Ann. § 40-35-210(b); *see also Carter*, 254 S.W.3d at 343*; State v. Imfeld*, 70 S.W.3d 698, 704 (Tenn. 2002).

A defendant is eligible for probation if the actual sentence imposed upon the defendant is ten years or less and the offense for which the defendant is sentenced is not specifically excluded by statute.  *See* Tenn. Code Ann. § 40-35-303(a).  The trial court shall automatically consider probation as a sentencing alternative for eligible defendants; however, the defendant bears the burden of proving his or her suitability for probation.  *See* Tenn. Code Ann. § 40-35-303(b); *see also Carter*, 2008 WL 2081247, at *10.  No criminal defendant is automatically entitled to probation as a matter of law.  *See* Tenn. Code Ann. § 40-35-303(b), Sentencing Comm'n Comments; *State v. Davis*, 940 S.W.2d 558, 559 (Tenn. 1997).  Rather, the defendant must demonstrate that probation would serve the ends of justice and the best interests of both the public and the defendant.  *See Carter*, 2008 WL 2081247, at *10; *State v. Souder*, 105 S.W.3d 602, 607 (Tenn. Crim. App. 2002).

In determining whether to grant probation, the court must consider the nature and circumstances of the offense; the defendant's criminal record; his or her background and social history; his or her present condition, both physical and mental; the deterrent effect on the defendant; and the defendant's potential for rehabilitation or treatment.  *See id*.  If the court determines that a period of probation is appropriate, it shall sentence the defendant to a specific sentence but then suspend that sentence and place the defendant on supervised or unsupervised probation either immediately or after the service of a period of confinement.  *See* Tenn. Code Ann. §§ 40-35-303(c), -306(a).

We note that the offense for which Defendant was convicted in Count 1, Class C felony theft from the victim the city of Chattanooga, was committed over a period of time between 2003 and 2008, while Defendant was an employee of the city.  For offenses committed prior to June 7, 2005, a defendant convicted of a Class C, D, or E felony and sentenced as an especially mitigated or standard offender was "presumed to be a favorable candidate for alternative sentencing options in the absence of evidence to the contrary."  T.C.A. § 40-35-102(6) (2003).  Effective June 7, 2005, our legislature amended Tennessee Code Annotated section 40-35-102(6) by deleting the statutory presumption that an eligible defendant is presumed to be a favorable candidate for alternative sentencing, and our sentencing law now provides that a defendant who does not possess a criminal history showing a clear disregard for society's laws and morals, who has not failed past rehabilitation efforts, and who "is an especially mitigated or standard offender convicted of a Class C, D or E felony, *should* be considered as a favorable candidate for alternative sentencing options

in the absence of evidence to the contrary. A court shall consider, but is not bound by, this advisory sentencing guideline." Tenn. Code Ann. § 40-35-102(5), (6) (emphasis added). Because it appears from the record that the offense occurred over a period of time both before and after the change in the law, we will afford Defendant the benefit of the presumption which existed in the law prior to the June 7, 2005 amendment.

Although a defendant may be presumed a favorable candidate for alternative sentencing, the defendant has the burden of establishing suitability for total probation. T.C.A. § 40-35-303(b) (2003); *State v. Boggs*, 932 S.W.2d 467, 477 (Tenn. Crim. App. 1996). Even though probation must be automatically considered, "the defendant is not automatically entitled to probation as a matter of law." T.C.A. § 40-35-303(b), Sentencing Comm'n Comments; *State v. Hartley*, 818 S.W.2d 370, 373 (Tenn. Crim. App. 1991). In determining whether to grant or deny probation, a trial court should consider the circumstances of the offense, the defendant's criminal record, the defendant's social history and present condition, the need for deterrence, and the best interest of the defendant and the public. *State v. Grear*, 568 S.W.2d 285, 286 (Tenn. 1978); *State v. Boyd*, 925 S.W.2d 237, 244 (Tenn. Crim. App. 1995). A trial court must acknowledge one of the following considerations before imposing a sentence of total confinement:

> (A) Confinement is necessary to protect society by restraining a defendant who has a long history of criminal conduct;
>
> (B) Confinement is necessary to avoid depreciating the seriousness of the offense or confinement is particularly suited to provide an effective deterrence to others likely to commit similar offenses; or
>
> (C) Measures less restrictive than confinement have frequently or recently been applied unsuccessfully to the defendant[.]

T.C.A. § 40-35-103(1) (2003).

At the conclusion of the sentencing hearing, as to the manner of service of Defendant's sentence, the trial court found that Defendant was eligible for probation and further stated:

> The law also says if you're convicted of a C, D, or E felony, that you are considered a favorable person for alternative sentencing. So, under the law, [Defendant] is considered a favorable person for alternative sentencing, but this is what we run into in [Defendant]'s case and I think the real problem that we have, in regard to confinement, confinement is necessary to avoid

depreciating the seriousness of the offense or confinement is particularly
suited to provide an effective deterrence. It goes further than that, we just
can't pull that out of the sky, because it says in regard to depreciating, the
act must be reprehensible. This act was reprehensible. I think even both
lawyers have argued that it's reprehensible. It must be offensive or
exaggerated.

So these acts that [Defendant] committed were reprehensible, they were
offensive, they were excessive and it seems like to me that to avoid
depreciating, some confinement is necessary.

In denying probation in Counts 1 and 9, the trial court also noted Defendant's history
of criminal conduct, her previous unwillingness to make restitution payments, and her
continued deception by lying to the probation officer who prepared the presentence report.

In *State v. Hooper*, 29 S.W.3d 1, 10-12 (Tenn. 2000), our supreme court stated that
"since the 'science' of deterrence is imprecise at best," trial courts should consider the
following factors in weighing the deterrence issue:

(1) Whether other incidents of the charged offense are increasingly present
in the community, jurisdiction, or in the state as a whole;

(2) Whether the defendant's crime was the result of intentional, knowing,
or reckless conduct or was otherwise motivated by a desire to profit or gain
from the criminal behavior;

(3) Whether the defendant's crime and conviction have received substantial
publicity beyond that normally expected in the typical case;

(4) Whether the defendant was a member of a criminal enterprise, or
substantially encouraged or assisted others in achieving the criminal
objective;

(5) Whether the defendant has previously engaged in criminal conduct of
the same type as the offense in question, irrespective of whether such
conduct resulted in previous arrests or conviction.

"These factors are meant to serve only as a guide, and a court need not find that all of these
factors are present before ordering incarceration based on a need to deter similar crimes."
*Id*. at 12.

In this case, Defendant was motivated by a desire to profit or gain from her criminal behavior. She benefitted both monetarily and from in-kind donations by her victims. Defendant took advantage of donated services and donated leave time from work. Defendant also engaged in previous criminal conduct of the same nature as the convictions in this case.

We conclude that the trial court properly considered the evidence presented and the sentencing principles, and the record supports the trial court's findings. Defendant is not entitled to relief. The offense in Count 9 occurred in 2008, and the law as amended in 2005, thus applies. Under this standard, Defendant is not entitled to relief from the trial court's order to serve that sentence by incarceration.

Finally, Defendant asserts, as we understand it, that by imposing a sentence of incarceration in one (actually two) of Defendant's convictions, and the remaining sentences suspended on probation, somehow Defendant's sentences have been effectively ordered to run consecutively, although the trial court ordered that her sentences be served concurrently, pursuant to the negotiated plea agreement. Defendant posits that, after serving her 42-month sentence, she could "be subject to serving the entire 5[-]year sentence, and the other sentences if she did not complete the ten[-]year probation period. This means the sentences are actually to some degree 'consecutive.'" However, Defendant cites no authority for this argument. *See* Tenn. Ct. Crim. App. R. 10(b). Defendant is not entitled to relief on this issue.

## CONCLUSION

Based upon the foregoing, we affirm the convictions and sentences, except as to Count 4, which we remand for entry of a corrected judgment.

_____
THOMAS T. WOODALL, JUDGE